37 A.3d 1155 (2012)
424 N.J. Super. 357
GROW COMPANY, INC., Plaintiff-Appellant/Cross-Respondent,
v.
Dilip CHOKSHI and Pharmachem Laboratories, Inc., Defendants-Respondents/Cross-Appellants.
Docket No. A-0026-10T4
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2012.
Decided March 7, 2012.
*1156 Dennis F. Gleason, Roseland, argued the cause for appellant/cross-respondent (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Carl R. Woodward, III, and Mr. Gleason, of counsel; Mr. Woodward, Mr. Gleason and Vincenzo M. Mogavero, on the brief).
*1157 Richard L. Ravin, Paramus, argued the cause for respondents/cross-appellants (Hartman & Winnicki, attorneys; Mr. Ravin, of counsel; Mr. Ravin, Richard E. Kummer and Shifra Herzberg, on the brief).
Before Judges CARCHMAN, FISHER and BAXTER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we review the Chancery judge's disposition of numerous factual disputes following a nonjury trial, as well as the judge's subsequent ruling on defendants' counsel fee claim. Applying our deferential standard of review, we find no reason to intervene and affirm in all respects.
Because this case was previously before us, there is no need to repeat what was thoroughly discussed about the nature and specifics of the parties' competing claims on that earlier occasion. See Grow Co., Inc. v. Chokshi, 403 N.J.Super. 443, 959 A.2d 252 (App.Div.2008). We need only briefly summarize for present purposes that plaintiff Grow Company, Inc., a health food manufacturer, commenced this suit against a former employee, defendant Dilip Chokshi, and a competitor, defendant Pharmachem Laboratories, Inc., alleging misappropriation of its trade secrets aided through Chokshi's breach of a confidentiality agreement he had entered into with plaintiff in 1982 while in plaintiff's employ.
Defendants counterclaimed, asserting that plaintiff's suit was barred by the terms of a 2001 settlement agreement, which ended a suit filed by plaintiff against Chokshi and Bio-Foods, Ltd., another competitor. The 2001 settlement agreement contained plaintiff's covenant not to sue and stipulated that a breach of that covenant would authorize an award of counsel fees to the parties to that suit and other generally defined persons or entities. As a result, defendantsbelieving plaintiff had commenced this suit in violation of the 2001 settlement agreementsought attorneys' fees. Defendants also demanded a judgment declaring the 1982 confidentiality agreement invalid.
The earlier appeal in this case was prompted by the prior Chancery judge's grant of a partial summary judgment, in which the judge: found plaintiff's claims were barred by the 2001 settlement agreement; dismissed the claim for a declaratory judgment concerning the 1982 confidentiality agreement; and concluded that plaintiff's breach of the 2001 settlement agreement permitted an award of counsel fees to Chokshi but not to Pharmachem. The judge did not, however, proceed to quantify the counsel fees he believed were due but instead dismissed that claim without prejudice and expressly authorized that claim's renewal in a later suit unhampered by the entire controversy doctrine. Id. at 454, 959 A.2d 252. Believing finality had been achieved in this manner, the parties appealed. We found, however, that the dismissal without prejudice only created the illusion of finality and concluded that the appeal was premature. Id. at 461-62, 959 A.2d 252. Notwithstanding our criticism of the manner in which the case came before us, we determined that the interests of justice were better served by a review of the interlocutory rulings questioned in the appeal, id. at 462-63, 959 A.2d 252, and, with one exception,[1] vacated *1158 the summary disposition of the parties' claims, id. at 479, 959 A.2d 252.
Following our remand, a trial before a different Chancery judge took place over the course of fifteen days in October and November 2009. In a thorough written opinion, the Chancery judge found: the 1982 confidentiality agreement was void and unenforceable; plaintiff failed to prove that Chokshi disclosed any of plaintiff's trade secrets to Pharmachem notwithstanding its efforts to ensure the confidentiality of its manufacturing processes; and Pharmachem was entitled to counsel fees as a result of plaintiff's breach of the 2001 settlement agreementeven though Pharmachem was not a party to the suit that resulted in the 2001 settlement agreementbecause the parties to that agreement had broadly defined the class of persons and entities entitled to benefit from its terms.
Chokshi and Pharmachem thereafter applied for an award of counsel fees, based not only on the contractual stipulation in the 2001 settlement agreement, but also on the frivolous litigation statute, N.J.S.A. 2A:15-59.1. The Chancery judge rejected the argument that plaintiff violated the frivolous litigation statute and further determined that defendants were not entitled to an award of counsel fees for all their efforts in this case. Instead the judge found three areas in which counsel fees could be awarded.
First, the judge found it was appropriate to award fees for work expended "prior to the appeal [that] was necessary on the issue of whether the 2001 settlement agreement was a general release." Second, the judge found defendants were entitled to an award of reasonable fees in "establishing the efficacy of the 2001 settlement agreement from the time of the filing of the verified complaint up until the point where the plaintiff abandoned that position on appeal." And, third, the judge found defendants were entitled to fees and expenses related to defeating the assertion that Pharmachem was not entitled to relief pursuant to the 2001 settlement agreement.
Recognizing the scope of this undertaking in light of the case's age and the extraordinary amount of time expended by counsel that required analysis, the Chancery judge appointed an expert to make recommendations on defendants' counsel fee claim. The expert reviewed the voluminous materials submitted and drew conclusions regarding the reasonableness of the hourly rates charged and the reasonableness of the amount of time expended as limited by the judge's rulings as to the scope of the award (hereafter "the award categories"). Specifically, the expert approached the matter by way of a three-step process.
The expert first reviewed counsel's invoices and assigned each entry a task code, following which he aggregated the hours expended by task code and ascertained the cost of each task by multiplying those hours by the reasonable hourly rates of the timekeepers. In accomplishing this, the expert expressed satisfaction, based on his review, that counsel's documentation was prepared with "considerable care and diligence."
*1159 In the second step, the expert isolated the portions of the total fees identified for each coded task in the first step in light of the award categories identified by the judge. This required, as the expert explained, "a review of thousands of pages of written or transcribed documents developed or created through the course of the litigation, and a determination of what portion of each document, if any, related to any of" the categories identified by the judge as permitting an award. The expert "tagged" each page that related to one of the award categories and then mathematically ascertained the percentage of compensable work among the entire body of work, which he described in his report in the following way:
Th[e] total number of tagged pages served as the numerator of a fraction for which the denominator was the total number of pages of that document. The fraction was converted into a percentage, which, in accordance with the methodology, represented the percentage of the document's total pages that were related in any way to the [a]ward [c]ate-gories.
In the third step, the expert took the percentage for each document and applied it to the aggregate time and fees for each specific coded task, a process better explained by way of the example the expert provided:
In the case of [defendants'] Answer to Verified Complaint, [d]efendants' counsel determined that 13 of 28 pages of the Answer contained statements related to one or more of the [a]ward [c]ategories, which represented 46.43% of the Answer's pages. The $8,625 aggregate legal fees charged with respect to the Answer as determined [in step one] ($6,835 by Chokshi counsel . . . and $1,800 by Pharmachem counsel . . .) was then multiplied by 46.43% per [step two] to arrive at the amount of $4,004.46, which [d]efendants present as recoverable legal fees for this [] coded task.
Based on this methodology, the expert recommended that the trial court award defendants $1,015,000 as reimbursement of their fees and costs incurred through May 31, 2010, an amount consisting of $865,000 in attorneys' fees and $150,000 in expenses. Putting this recommendation into context, the expert observed that the $865,000 in attorneys' fees reflected a 37% reduction of the adjusted fee amount sought by defendants, and less than 31% of the total fees paid by defendants through May 31, 2010. The expert viewed this adjustment as compensating "for the imperfect nature of the determinations made by the methodology and more accurately reflects the findings" of the judge. In addition, the expert examined defendants' claim of $63,115.46 for fees and expenses and recommended a ten percent reduction to $57,000.
The parties filed their responses to the expert's report and, on July 7, 2010, the Chancery judge heard additional argument and ruled on the application. She first commented on the report's comprehensiveness and accepted the recommendation that defendants be awarded $150,000 in expenses through May 31, 2010. As for the fees, the judge made the following comments:
[I]n spite of [defense counsel's] indication that he was conservative, which I accept, but nonetheless it was an approximation and it had certain potentials for overestimating the time or the cost put in. . . .
The fact that a certain number of pages are generated by a certain issue doesn't necessarily translate to . . . how many hours that issue takes.
The judge also stated that others could have performed the necessary tasks in less time than defense counsel:

*1160 I will say, because it's important to my decision here, that if you know the term "you leave no stone unturned," [defense counsel] leaves no pebble unturned. He is the most thorough, comprehensive litigator that I think I've ever run across. So with that context and that background, if this case took 15 days, I would say it would have taken some fewer days with virtually any other lawyer, because [defense counsel] is so thorough as to make it sometimes difficult because he doesn't like to abandon positions or points. [Y]our average lawyer would say, I have five points, I'll pick my top three and press those. [Defense counsel] will come up with ten points and won't abandon a single one of them. So that takes a little bit longer and it's a different style and it's a perfectly fine acceptable style, however, I don't think it's appropriate to assess that level of lawyering, if you want to call it that, against the other side.
Concluding that the fifteen-day trial "could have been done in 12 days" but for defense counsel's "thoroughness," the judge reduced the expert's recommendation of $865,000 another 20% to $692,000. The judge also reduced the fee award sought for time incurred in seeking fees and expenses up until that time by 20% instead of the 10% recommended by the expert; she awarded $50,492 for that aspect.
The judge later considered an application for subsequent work incurred by defendants in seeking fees and ultimately determined they were entitled to a total of $999,186; $474,593 to Chokshi and $524,593 to Pharmachem.
Plaintiff appealed, and defendants cross-appealed. We affirm in all respects.
[At the request of the Appellate Division, only that portion of the opinion addressing the attorneys' fee award is to be published. The discussion regarding the court's disposition of the other issues raised in the appeal and cross-appeal are omitted. As to these other issues, the Appellate Division affirmed the trial court's determinations.]
Plaintiff challenges the attorneys' fee award because, in its view: (a) the court's methodology for fixing a reasonable fee deviated from the requirements of Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995); (b) the award was excessive; (c) the judge erred in accepting the expert's recommendations regarding defendants' expenses; and (d) the judge failed to "meaningfully" allocate the attorneys' fees award between defendants. We find insufficient merit in these arguments to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only the following comments regarding the first of the four subparts described above and, specifically, the methodology employed in determining the reasonableness of the fees awarded.
To be sure, because the judge found that only certain aspects of the legal work performed on behalf of defendants were compensable, ferreting from defendants' entire body of work only those tasks related to compensable work was daunting. The judge appointed an expert to engage in this process in the first instance. That approach, although not always ideal, had the salutary effect here of providing a cohesive understanding of the work performed in each award category in a quick and efficient manner. Although one aspect of the methodology utilized by the expert is unusualattributing a percentage for certain tasks by adopting a mathematical formula based upon the length of each written productwe have no cause to second guess this method as a fair approach toward illuminating the quest for a reasonable fee. Indeed, contrary to plaintiff's forceful contentions, the record demonstrates *1161 the judge did not blindly accept the expert's recommendations.
Instead, the judge recognized that the expert had provided a "very rough estimate" of the recoverable fees. The judge then considered that estimate in light of the feel of the case developed from having presided over the lengthy trial. We noted above the judge's comments regarding the length of the trial and how the extreme thoroughness of defense counsel had prolonged the matter beyond what was reasonably compensable. As a result, the judge deeply discounted the results reached by the expert.
Trial courts have considerable latitude in resolving fee applications, and a reviewing court will not set aside an award of attorneys' fees except "on the rarest occasions, and then only because of a clear abuse of discretion." Rendine, supra, 141 N.J. at 317, 661 A.2d 1202. We have intervened, for example, when a court's determination "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J.Super. 181, 193, 887 A.2d 1191 (App.Div.2005); see also Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002). Plaintiff has not presented an ample reason for our intervention here.
New Jersey generally follows the so-called "American rule," which requires that each party pay its own legal costs. Rendine, supra, 141 N.J. at 322, 661 A.2d 1202. Nonetheless, fees may be shifted when permitted by statute, court rule or contract. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440, 771 A.2d 1194 (2001). Regardless of the source authorizing fee shifting, the same reasonableness test governs. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386, 982 A.2d 420 (2009).
When fee shifting is permissibleas here, by contracta court must ascertain the "lodestar," that is, the "number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." Ibid. To compute the lodestar, courts must first determine the reasonableness of the hourly rates charged by the successful party's attorney in comparison to rates "`for similar services by lawyers of reasonably comparable skill, experience and reputation'" in the community. Rendine, supra, 141 N.J. at 337, 661 A.2d 1202 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990)). After evaluating the hourly rate, the court must then determine the reasonableness of the hours expended on the case. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22, 860 A.2d 435 (2004). "Whether the hours the prevailing attorney devoted to any part of a case are excessive ultimately requires a consideration of what is reasonable under the circumstances," and should be informed by the degree of success achieved by the prevailing party. Id. at 22-23, 860 A.2d 435. The award need not necessarily be proportionate to the damages recovered. Id. at 23, 860 A.2d 435.
The methodology utilized and recommended by the expert and adopted by the Chancery judge is consistent with these principles. Indeed, when viewed within this framework, step one of the methodology identified the components comprising the lodestar. The remaining steps were designed to ensure that defendants were compensated for only those fees necessary to achieve the final result and only those compensable within the areas defined by the judge. See Litton, supra, 200 N.J. at 387, 982 A.2d 420 (recognizing that "when a party has succeeded on only some of its claims for relief, the trial court should reduce the lodestar to account for the limited success").
*1162 Moreover, the Chancery judge was fully cognizant of the methodology's imperfections, acknowledging the page count of a work product is not a precise indicator of the time reasonably expended in producing a document:
The fact that a certain number of pages are generated by a certain issue doesn't necessarily translate to . . . how many hours that issue takes. We all know that in a summary judgment motion. . . most lawyers have . . . one button to push which gives them all the law. . . . On the other hand, lawyers can spend many many hours and come to the conclusion that something does not apply. . . . So the number of pages is just one very rough estimate of the amount of work that's done.
Using the page-count approach as an estimate, the judge made a substantial downward adjustment based on her own feel of the case.
We agree that the methodology was not perfect but it was the best approach available absent a tedious and painstaking evidentiary hearing designed to examine every task for which defendants sought compensation that may very well have taken more time than the actual trial on the merits. In the final analysis, in rejecting plaintiff's criticisms of the methodology, we rely on the spirit of our Supreme Court's declaration that "there is no precise formula . . . [and that t]he ultimate goal is to approve a reasonable attorney's fee that is not excessive." Litton, supra, 200 N.J. at 388, 982 A.2d 420. See also Walker v. Giuffre, 209 N.J. 124, 35 A.3d 1177 (2012). We are satisfied that the Chancery judge's reliance on the expert's thorough and thoughtful approachtempered by her own additional deductions based upon having sat through the trialultimately produced a reasonable fee award.
Affirmed.
NOTES
[1] We found no merit in plaintiff's contention "that Chokshi was required to actually expend counsel fees in order to obtain an award of fees pursuant to the settlement agreement." Grow Co., Inc., supra, 403 N.J.Super. at 479, 959 A.2d 252. That ruling constituted the law of the case and was binding on the parties, and we reject plaintiff's further attempts to argue we were previously in error. On the other hand, our determination that the other issues were not ripe for summary judgment did not trigger application of the law of the case doctrine. See Gonzalez v. Ideal Tile Importing Co., Inc., 371 N.J.Super. 349, 356-57, 853 A.2d 298 (App.Div.2004) (recognizing that the denial of summary judgment "is not subject to the law of the case doctrine because it decides nothing and merely reserves issues for future disposition"), aff'd, 184 N.J. 415, 877 A.2d 1247 (2005), cert. denied, 546 U.S. 1092, 126 S.Ct. 1042, 163 L.Ed.2d 857 (2006).