**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4801-17T1

IN THE MATTER OF THE
ESTATE OF FAITH HURSA,
 Deceased.

_____

Submitted December 4, 2019 – Decided February 26, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000091-16.

Lipsky Portales PA, attorneys for appellant Robin Roodenburg (Sean M. Lipsky and Elena Portales, of counsel and on the briefs).

Joseph V. Mac Mahon, attorney for respondent Melissa Kelly (Joseph V. Mac Mahon, of counsel; Kelly Ann Miller, on the brief).

Struble Ragno, attorneys for respondent Amy Hursa-Wilcox (Joseph J. Ragno, Jr., on the brief).

PER CURIAM

  Plaintiff Robin Roodenburg, one of decedent Faith Hursa's six surviving children, appeals from the following orders: three May 26, 2017 orders denying

plaintiff's motion to disqualify Joseph J. Ragno, Jr. and the Ragno Law Firm, LLC d/b/a Struble Ragno, permitting Ragno and Struble Ragno to intervene, and granting her sister Amy Hursa-Wilcox's[1] motion to quash a subpoena served to the information technology company GCS Consultants; two April 25, 2018 orders entering summary judgment in favor of Amy and her sister Melissa Kelly and dismissing the complaint against her brother Joseph Scott Hursa; a May 25, 2018 order removing plaintiff and Melissa as co-administrators of the estate of Faith Hursa (Estate); two June 29, 2018 orders denying plaintiff's motion for attorney's fees and costs and granting reimbursement of expenses and attorney's fees to Melissa.

The trial court dismissed plaintiff's claims and entered summary judgment in favor of defendants on the basis that plaintiff was not ousted from the Estate's residence in Franklin Lakes (the residence). We affirm. We also affirm the court's fee decision. We remand only for a plenary hearing to resolve the dispute concerning the quantity of Melissa's reimbursements.

---

[1] We use first names for the siblings for ease of reference, intending no disrespect. We use Joseph Scott Hursa's middle name, because that is how the trial court and parties refer to him.

A-4801-17T1

## I. Background.

On December 26, 2007, decedent died intestate leaving six surviving children: plaintiff, Melissa, Amy, Scott and Debra Hursa, and Jennifer Watkins (collectively siblings).[2]  At the time of the decedent's death, the Estate had a value of about $800,000 to $900,000, but the value was reduced to less than $420,000 during this litigation.

Melissa alleged she paid $60,902[3] from her personal funds for the debts and expenses of the Estate from December 28, 2007 until November 10, 2012. The expenses include funeral expenses, homeowner's insurance, electric bills, outstanding credit card balances, real estate taxes, and legal services.  Melissa testified at a deposition that upon her attorney's advice, she sought and received a tax identification number for the Estate (EIN) from the Internal Revenue Service on January 18, 2008.

On February 29, 2008, the siblings' maternal grandmother, Ruth Boatwright, died, leaving the siblings as her only heirs.  At the grandmother's repast, Melissa provided all the siblings, except Jennifer who was not in

---

[2]  Scott, Debra and Jennifer have not appeared in the litigation.

[3]  We round all monetary amounts to the nearest dollar.

attendance, with a copy of decedent Faith Hursa's trust, which she then believed validly transferred Faith Hursa's residence to her. She testified that she read the first two paragraphs of the document and told her siblings that it put her "in charge." She also presented her siblings with an agreement she prepared that deemed her the administrator of the decedent's and the grandmother's estates and allowed each of her siblings to receive a portion of their grandmother's estate.

On March 7, 2008, Melissa opened a checking account on behalf of the Estate, listing the owners as "Faith J[.] Hursa Estate" and "Melissa Kelly, Executrix." The total amount in the checking account was $118,156. In May 2009, Melissa retained Struble Ragno to represent her in a complaint for administration of the Estate. George Struble of Struble Ragno searched the deed record and found that, contrary to Melissa's belief, the residence was not titled in the trust's name. In July 2009, plaintiff and Melissa were appointed co-administrators of the Estate.

Amy, who had been living with the decedent in the residence prior to her death, set forth in her certification that on September 19, 2009, she moved from the residence to her grandmother's house in Fair Lawn, which "Melissa had inherited . . . [and] allowed [her] to occupy. . . because of [her] limited financial means at that time." Although Amy certified that she moved again in August

4

2010 to Bloomfield, Melissa never told plaintiff about Amy's move. Rather, Melissa sent plaintiff written correspondences between 2010 and 2012, stating that Amy was still living in the residence. Plaintiff contends Amy lived there until October 2012. On October 29, 2010, plaintiff asked Melissa where Amy's rent for living in the residence was. Melissa testified that plaintiff's question "threw [her] for a loop because rent [had] never been discussed."

In March 2011, a real estate appraisal company estimated the value of the residence at $475,000. On November 14, 2011, Melissa and Amy offered to buy the residence for $400,000. As she had before, Amy listed the residence as her home address in a federal tax form.

Amy testified that she and her husband paid "a handful" of cable bills for the residence from April to September 2012, while nobody lived there. While maintaining that she did not live there, Amy said she left a pet cage, dresser, knickknacks, clothing, and bed at the residence. Amy filled out a change of address form effective October 14, 2012, listing her address in Bloomfield. Cable service was disconnected on October 22, 2012.

Plaintiff contends that after Amy moved out in 2012 until the sale of the residence in November 2014, Scott lived there without paying rent. A realtor for the residence certified that a man was living there during the time he listed

the residence from May 2014 through September 2014. At a deposition, Scott testified that from October to December 2013, he stayed at the residence "on and off to clean [it] out." Scott said: "[T]he first time I heard about [the request for] rent [from] me was [this] litigation." Plaintiff contends Melissa precluded her from entering the residence from decedent's death until its sale in November 2014. Scott testified that Melissa never told him to keep plaintiff from entering the residence.

On November 17, 2014, the residence sold for $425,000 and the net proceeds were deposited into the trust account of Melissa's attorney, Michael Rudolph. On November 30, 2015, Rudolph wrote to Melissa: "If Amy was living in the house . . . the reasonable rental value . . . should be charged to her share of the [E]state. If she lived there only for two months after Melissa and [plaintiff] qualified, that is de minimis and should not count."

On July 12, 2016, plaintiff's counsel requested that Ragno provide her with "a full and complete copy of [his] firm's file relating to the Estate administration." After Ragno provided the requested information, plaintiff's counsel asked that he provide emails between Melissa and Struble or his firm. Ragno replied via email, "I have nothing here." Plaintiff alleges that Struble Ragno destroyed evidence after the firm decommissioned its computer server.

6

In March 20, 2017, Ragno testified during a deposition that the server that stored Struble Ragno's data was "no longer active" and that he "transferred the information" to his current computer while the rest was cleared by GCS Consultants. After confirming with GCS Consultants that it still had Struble Ragno's server and data, in April 2017, plaintiff sent a subpoena duces tecum to GCS Consultants asking a representative to appear for a deposition. The court granted Amy's motion to quash the subpoena.

The trial court's April 10, 2018 written opinion addressed: (1) Amy's motion for summary judgment, (2) Melissa's motion for summary judgment and (3) plaintiff's motion for default judgment against Scott. Plaintiff's complaint included the following counts against Melissa, Amy and Scott: (a) breach of fiduciary duty; (b) declaratory judgment; (c) violation of N.J.S.A. 3B:10-29; (d) unjust enrichment; (e) conspiracy; and (f) ouster.

In its written opinion, the trial court dismissed plaintiff's claims against Scott, stating:

> Judgment [cannot] be entered as to Scott on any count of the [a]mended [c]omplaint because there is no proof of residence or occupancy of the [r]esidence by Scott, no evidence that [rent] was ever demanded or is owed, and no proof that Scott ever had any role in excluding anyone from the [r]esidence, but for a de minimus two . . . days over a seven . . . year period, accepting as true the disputed allegations of [plaintiff]

and Debra.  There being no basis in the record for any liability of Scott to the [E]state or [plaintiff], nor any coherent damage calculation, the [f]irst [a]mended [c]omplaint . . . as against Scott, will be dismissed with prejudice.

Based on Amy's alleged occupancy of the residence, the court then addressed plaintiff's conspiracy claim against Melissa:

> The court [cannot] on this record, in the context of summary judgment jurisprudence, resolve the issue of when Amy left the [r]esidence – September 19, 2009 (as she claims), or October, 2012 as Melissa contends, or some other date.
>
> . . . .
>
> Here, there is no evidence that [plaintiff] ever sought to occupy or co-occupy the [r]esidence after the mother's passing.  If there is evidence Debra or Jennifer was barred from possession or access, that is a claim that belongs to [them], and neither sibling has elected to pursue it.  What [plaintiff] sought, and what Melissa is said to have thwarted, is access to the [r]esidence. Amy purportedly had concerns that her personal belongings and animals would be at risk if others were provided keys to the home.
>
> Here, there is no evidence that the [r]esidence was not physically susceptible to occupancy by more than one sibling.  Nor is there any evidence [plaintiff] sought to occupy the [r]esidence or was prevented from occupying [it].  Accordingly, no ouster occurred. Capital Fin. Co. v. Asterbadi, 398 N.J. Super. 299, 312 (App. Div. 2008).

There being no ouster by Amy, there is no liability on [her] part to account or to pay rent . . . . Esteves v. Esteves, 341 N.J. Super. 197, 202 (App. Div. 2008).

There is no evidence of a demand that Amy pay rent.

In sum, the court grants summary judgment in favor of Amy on the claim that she owes the [E]state compensation for her occupancy of the premises – however long that occupancy was – and on the claim that she ousted [plaintiff] from the [r]esidence.

The trial court then dismissed plaintiff's claims against Amy:

Accordingly, the following counts, to the extent they are against Amy, are dismissed:

Count II: Declaratory Judgment seeking determination that Amy ousted [plaintiff] and owes rental/occupancy charges and that her share of the Estate should be proportionately reduced.

Count IV: Unjust Enrichment Insofar as Amy was entitled to occupy the premises, her occupancy was not unjust and she had no duty to pay to stay.

Count V: Conspiracy
There being no ouster, Amy [cannot] be said to have conspired with Melissa to oust [plaintiff]. Possession was never sought. If possession was desired, [plaintiff] had the power to have the locks changed, or to come to court to demand access or possession, or to seek to dispossess her sister from the [r]esidence.

Lastly, the trial court dismissed plaintiff's claims against Melissa: "There being no basis for relief against Scott or Amy with respect to their occupancy, rent-free, of the [r]esidence, there is no basis for liability on the part of Melissa for that state of affairs. All such claims are dismissed with prejudice."

On April 25, 2018, the trial court entered an order providing:

> Summary [j]udgment . . . is entered in favor of . . . Melissa . . . and against [p]laintiff dismissing with prejudice [c]ounts II [declaratory judgment as to all defendants], III [violation of N.J.S.A. 3B:10-29 as to Melissa], IV [unjust enrichment as to all defendants], V [conspiracy as to all defendants], and VI [ouster as to all defendants] of the [f]irst [a]mended [c]omplaint as against . . . Melissa . . . .

The order further provided:

> Summary [j]udgment . . . is entered in favor of . . . Melissa . . . and against [p]laintiff as to [c]ount I of the [f]irst [a]mended [c]omplaint insofar as [p]laintiff's "breach of fiduciary" claims against . . . Melissa . . . are based upon factual allegations of use, occupancy and control of the [r]esidence by [d]efendants Melissa, Amy . . . and . . . Scott . . . that gave rise to the asserted claims of unjust enrichment ([c]ount IV), conspiracy ([c]ount V), and ouster ([c]ount VI), all of which have been dismissed with prejudice . . . .

## II. Summary Judgment.

We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015).

Summary judgment is appropriate where the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46–2(c). We "review the facts in the light most favorable to [the] plaintiff," as the non-moving party. DiProspero v. Penn, 183 N.J. 477, 482 (2005).

Amy argues, and we agree, that plaintiff's claims are barred because plaintiff became an administrator in 2009 and did not file her complaint until 2016, thus exceeding the six-year statute of limitations. N.J.S.A. 2A:14-1; see Warren v. Muenzen, 448 N.J. Super. 52, 66 (App. Div. 2016) (applying N.J.S.A. 2A:14-1 in the estate context).

Plaintiff claims Amy lived at the residence from the date of decedent's death, December 26, 2007, until Amy married in October 2012. Plaintiff became a co-administrator of the Estate on July 23, 2009, and brought her first complaint alleging Amy's wrongful occupancy on March 14, 2016. If plaintiff's cause of action began to accrue on decedent's date of death, more than eight years elapsed before plaintiff's 2016 complaint. See Midland Funding LLC v. Thiel, 446 N.J. Super. 537, 548 (App. Div. 2016) (noting "[a] cause of action will accrue on the date that 'the right to institute and maintain a suit first arose'") (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 394-95 (2016)). Even assuming

11

plaintiff's cause of action did not accrue until she was appointed as co-administrator, more than six years elapsed before plaintiff's 2016 complaint and thus the statute of limitations had run. See N.J.S.A. 2A:14-1. Without reviewing in depth the trial court's apparently sound reasons to dismiss plaintiff's claim for wrongful occupation of the residence against Amy, based on an insufficiency of the evidence presented, the dismissal was proper based on the statute of limitations alone.

### III. Fees.

Plaintiff argues that even if the court's summary judgment decision is not reversed, the court's denial of her legal fees should be reversed because the court did not factor in plaintiff's statutorily mandated fiduciary duty to "take all steps reasonably necessary for the management, protection and preservation of, the estate." N.J.S.A. 3B:10-29. Plaintiff asserts that she was tasked with dealing with the Estate's assets as "a prudent [person] dealing with the property of another." N.J.S.A. 3B:10-26. She argues that the trial court erred by failing to acknowledge her fiduciary duty and instead listing the eight factors set forth by the Rules of Professional Conduct (RPC) for reasonable fees. Rules of Professional Conduct, Pressler & Verniero, Current N.J. Court Rules, Appendix to R. 1:5(a), www.gannlaw.com (2019).

In response, Amy, citing to In re Bloomer, 37 N.J. Super. 85, 93-94 (App. Div. 1955), states that "[g]ranting counsel fees and costs is within the sound discretion of the [c]ourt." She notes that plaintiff's fee request of $175,265 represents about forty-two percent of the estate's entire value. In Bloomer, we held that attorney's fees "should never exceed reasonable compensation for the services rendered [for] the estate." Id. at 94.

Fee decisions are afforded "considerable latitude." Grow Co., Inc. v. Chokshi, 424 N.J. Super. 357, 367 (2012). A reviewing court will look for an abuse of discretion when reviewing an award of attorney's fees. Ibid. An abuse of discretion occurs where "a court's determination 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

The court discussed both RPC 1.5(a) and Bloomer in its analysis, noting that "a court should not grant attorney fees that are not reasonably expended." Citing to Rendine v. Pantzer, 141 N.J. 292, 335 (1995), the court explained that reasonably expended fees are those that are not "excessive, redundant, or otherwise unnecessary." The trial court denied plaintiff's request for fees based on its conclusion that the record lacked support for her claims, finding: "[W]hile

the fees overall are not unreasonable per se, they were incurred bringing claims against a co-fiduciary and other beneficiaries that proved to have [no] factual or legal support." Given the relatively small size of the Estate to be divided among six siblings, and plaintiff's unreasonable positions, the court did not abuse its discretion in denying her counsel fees. See Chokshi, 424 N.J. Super. at 367.

When reviewing Melissa's fee request, the trial court found that "[t]he work undertaken was entirely reasonable and necessary, the quality of work was excellent, and the defensive positions taken by Melissa . . . were vindicated by the court." The court offered a reasonable explanation for ordering that "the fees sought [by Melissa] should be awarded in full."

## IV. Reimbursements.

Plaintiff argues the trial court erred in approving all of Melissa's $60,902 claim for reimbursement without sufficient proof of the expenses. Plaintiff contends that a fiduciary must produce evidence of expenses pursuant to Rule 4:87-5 and Rule 4:87-8. She further argues that any exceptions must be addressed during an evidentiary hearing unless no factual dispute exists. Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:87-8 (2019); see In re Estate of Skvir, 170 N.J. Super. 559, 562 (App. Div. 1979).

Plaintiff filed opposition to Melissa's motion for reimbursement. As an example, she noted that the invoice Melissa provided for tree removal services in the amount of $3317 was confirmed by the vendor to be doctored. Melissa added $217 in sales tax, although the vendor said he "only charged and collected $3100.00 for the work performed." Melissa did not submit proof of payment, alleging she paid cash for the service. Debra and Jennifer also filed exceptions to the accounting, adopting the allegations and arguments plaintiff made. The trial court found Melissa had a right to reimbursement for expenses paid on the Estate's behalf under In Re Estate of Beales, 13 N.J. Super. 222, 228 (App. Div. 1951), where we held that a fiduciary to an estate must exercise "that degree of care and caution, skill, sagacity, and judgment, industry and diligence, circumspection and foresight that an ordinarily discreet and prudent person would employ in like matters of his own and in the same or similar circumstances." The trial court noted it was "unpersuaded by any argument raised by [p]laintiff" and reasoned that having granted summary judgment, it "determined that Amy was not liable to the Estate for rent or other expenses . . . Thus, there is no credit that need be applied, nor any need to have a plenary hearing."

15

Plaintiff waived her right to a formal accounting, Rule 4:87-3, and audit by the surrogate, Rule 4:87-6. However, plaintiff, Debra, and Jennifer objected to Melissa's accounting for her expenditures made on behalf of the Estate. We understand the trial court's desire not to further diminish this modest estate, to be divided among six siblings, after ten years of litigation. However, a brief evidentiary hearing is required to address the factual disputes raised concerning Melissa's accounting. See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:87-8.

Plaintiff also raised arguments concerning her removal as co-administrator, her request for further discovery, the summary judgment granted Melissa and dismissal of Scott. We substantially rely on the trial court's reasons. These arguments "are without sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded for an evidentiary hearing regarding reimbursements. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4801-17T1