**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1695-23

339 RIVER ROAD PARTNERS, LLC,

    Plaintiff-Respondent,

v.

339 RIVER ROAD HOLDINGS, LLC,

    Defendant-Respondent,

and

HONGKUN USA REAL ESTATE
DEVELOPMENT, LLC, HONGKUN
GROUP USA HOLDINGS CORP., and
HONGKUN USA REAL ESTATE
HOLDINGS, LLC,

    Defendants-Appellants,

and

FAN (RICHARD) LIU and WEIHAO
(ANDY) ZHAO,

    Defendants.

_____

Argued March 4, 2025 – Decided August 21, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000137-23.

Jeffrey W. Herrmann argued the cause for appellants (Cohn Lifland Pearlman Herrmann & Knopf, LLP, attorneys; Jeffrey Herrmann, of counsel and on the briefs; Alex A. Pisarevsky, on the briefs).

Roger Plawker argued the cause for respondents 339 River Road Partners, LLC (Pashman Stein Walder Hayden, PC, attorneys; Michael S. Stein, of counsel and on the brief; Roger Plawker, on the brief).

PER CURIAM

Defendants Hongkun USA Real Estate Development, LLC, Hongkun Group USA Holdings Corp., and Hongkun USA Real Estate Holdings, LLC, appeal Law Division orders enforcing an agreement between defendants and plaintiff, 339 River Road Partners, LLC, to sell a limited liability company which owned real property in foreclosure. Defendants also appeal the trial court's February 5, 2024 order awarding plaintiff counsel fees. We affirm.

I.

Defendant 339 River Road Holdings, LLC (RRH) is a subsidiary of defendants Hongkun USA Real Estate Development, LLC, Hongkun Group USA Holdings Corp., and Hongkun USA Real Estate Holdings, LLC

2

(collectively the Hongkun defendants), and is the owner of record of real property located at 339 River Road, Edgewater, New Jersey. The property was encumbered by a $30,000,000 mortgage held by East-West Funding LLC (EWF). In connection with the loan, defendant Hongkun USA Real Estate Holdings, LLC executed a full, unconditional guarantee for RRH's obligations under the mortgage. At the time the parties began negotiations for the property, the mortgage was in default and EWF had commenced foreclosure proceedings.

On June 2, 2022, RRH and plaintiff entered into a purchase and sale agreement (PSA) in the amount of $45,000,000. The sale was not consummated, and plaintiff terminated the PSA on November 29, 2022. Nevertheless, the parties continued to negotiate and, on March 13, 2023, plaintiff and RRH executed a memorandum of understanding (MOU). The MOU signatories included Bruce Sturman for the plaintiff, defendant Fan Liu on behalf of Hongkun USA Real Estate Holding LLC, and defendant Weihao Zhao on behalf of the Hongkun Group USA Holdings Corp.

The MOU's stated purpose was "to set forth the process by which [plaintiff] shall become the one hundred percent (100%) owner of [RRH] with full management control over [RRH.]" We identify the relevant terms here.

3

Concerning consideration, plaintiff agreed to pay the Hongkun defendants one dollar in exchange for full control and ownership of RRH  In addition, the Hongkun defendants would be entitled to an additional payment of $3,000,000 if plaintiff obtained final residential zoning approvals.  If the approvals were obtained within six months of the MOU's signing, the Hongkun defendants would accept a lesser amount of $2,000,000.

The MOU identified liabilities to be transferred.  It included a litigation schedule to which the Hongkun defendants and RRH were parties, which would be "assumed" by plaintiff "as part of the transaction . . . ."  The schedule itself included the pending foreclosure action, noting an outstanding debt of $37,594,492.

The MOU also included a provision related to attorney's fees:

> If any party shall retain or engage an attorney or attorneys to collect or enforce or protect such party's interest with respect to this MOU, the prevailing party shall be entitled to receive payment of all costs and expenses of collection, enforcement, or protection, including reasonable attorney's fees, whether or not suit is brought and through all appeals.

Memorializing the parties' express intentions, the MOU stated that it "constitute[d] the entire agreement" between the parties and no other representations or promises were made other than those expressly set forth in

4

the document. The parties included plain language expressing their collective intention to be bound by the terms and conditions included in the MOU.

Finally, the MOU established a closing date to take place within ten days of the parties' execution of a purchase agreement.

When RRH and the Hongkun defendants did not perform their obligations under the MOU, plaintiff filed a verified complaint and order to show cause, naming them as defendants, as well as Liu and Zhao. Plaintiff sought a declaratory judgment that the MOU was an enforceable contract. Plaintiff also sought counsel fees. The court heard argument, then entered an order enforcing the MOU and directing the parties to finalize the closing documents.

When the Hongkun defendants failed to deliver an assignment of their interests in RRH, plaintiff moved to enforce plaintiff's rights. Plaintiff sought to compel delivery, as well as an award of counsel fees. The court granted plaintiff's motion in its entirety. Subsequently, the Hongkun defendants moved for a limited stay of the court's order pending their appeal but failed to oppose the award of counsel fees. The trial court denied the motion.

The Hongkun defendants appeal, contending that the MOU is not enforceable because it lacks essential terms and is illusory. After having not opposed the fee award below, the Hongkun defendants now challenge the award.

A-1695-23

II.

We review de novo questions of law.  Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).  The "'[i]nterpretation and construction of a contract is a matter of law.'" Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div. 2021) (alteration in original) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)).  It follows that the enforceability of the MOU is reviewed de novo.

"Under state law, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 135 (2020) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).  "'So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound.'"  Ibid. (quoting Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975)).  Essential terms are those that go "to the heart of the alleged agreement." Satellite Ent. Ctr., Inc. v. Keaton, 347 N.J. Super. 268, 277 (App. Div. 2002).  But "a court will not refuse to enforce [the] contract because some of its less critical terms have not been articulated." Id. at 276.

A-1695-23

Contracts based on an illusory promise are generally unenforceable. See Bryant v. City of Atl. City, 309 N.J. Super. 596, 620 (App. Div. 1998). An illusory promise is a "promise which by [its] terms make[s] performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue[.]" Ibid. (alterations in original) (quoting Restatement (Second) of Conts. § 2 cmt. e (Am. L. Inst. 1979)). "[I]f performance of an apparent promise is entirely optional with a promisor, the promise is deemed illusory." Ibid. Courts should avoid interpreting a contract as illusory, if possible. See Jaworski v. Ernst & Young US LLP, 441 N.J. Super. 464, 477 (App. Div. 2015) (citing Bryant, 309 N.J. Super. at 621).

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "'In a word, the judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and [then] accord to the language a rational meaning in keeping with the express general purpose.'" Ibid. (quoting Owens v. Press Pub. Co., 20 N.J. 537, 543 (1956)). "Thus, when

A-1695-23

the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45 (citing Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)).

"Trial courts have considerable latitude in resolving fee applications, and a reviewing court will not set aside an award of attorneys' fees except 'on the rarest occasions, and then only because of a clear abuse of discretion.'" Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

### III.

### A.

We are unpersuaded by the Hongkun defendants' first argument that, because the MOU was missing an essential term in the form of an indemnification provision for the corporate entity, the MOU is unenforceable.

The MOU contains no reference to a guaranty or indemnification. According to the plain text of the MOU, its purpose was to transfer ownership of RRH to plaintiff. The MOU clearly stated that liabilities were "to be assumed by [plaintiff] as part of the transaction contemplated hereunder." It follows that

A-1695-23

the MOU accomplished the purpose of the transaction by transferring the assumption of the debt to the plaintiff.

Nothing else in the record before us tends to show that the release of Hongkun USA Real Estate Holdings, LLC, from its guaranty was essential to the MOU's purpose. We find no error here.

The Hongkun defendants next contend the MOU terms regarding residential zoning approvals were illusory, rendering the contract unenforceable. We disagree.

The MOU states:

> In addition, [the Hongkun defendants] shall be entitled to a payment of $3,000,000 upon the granting of enforceable final zoning approvals equal to (i) a minimum of 82.50 units per acre for the [p]roperty or (ii) such other lesser minimum units per acre acceptable to [plaintiff] in its sole discretion (either, the "Approval"), payment to be made by [plaintiff] to [the Hongkun defendants] within thirty (30) days thereafter (Time being of the essence with respect thereto), provided, however, that, in the event [plaintiff] obtains such final, enforceable Approval within six months from the date of this MOU and pays same within thirty (30) days thereafter as provided above, or, if the Approval is obtained and accepted within such six month period under clause (ii) above and [plaintiff] pays same within thirty (30) days after commencement of foundation work at the [p]roperty (TOE) then, in either case, [the Hongkun defendants] shall accept, instead of $3,000,000, $2,000,000.

9

A-1695-23

The MOU does not require plaintiff to seek residential zoning approval. The choice to seek residential zoning approval is entirely within plaintiff's power, according to the terms stated above. This language represents a conditional promise, indeed two interlocking conditional promises.

A conditional promise is sufficient to form a binding contract. See Restatement (Second) of Conts. § 224 (Am. L. Inst. 1979) ("A condition is an event, not certain to occur, which must occur . . . before performance . . . becomes due."). The first condition which must occur before performance can become due is plaintiff's election to apply for residential zoning approvals. After plaintiff applies, the next condition which must be satisfied is that the municipality must grant the zoning approvals. When those two conditions are satisfied, then plaintiff's duty to pay defendants is triggered. The contract, for reasons we fail to understand, was drafted in such a way to leave this dual contingency in place. We avoid interpreting a contract as illusory, if possible, Jaworski, 441 N.J. Super. at 477, and we will not draft a better agreement for the parties than the one they made for themselves. Quinn, 225 N.J. at 45.

As we see it, the core purpose of the contract was plaintiff's assumption of defendants' foreclosure related debt. That core purpose remains intact regardless of the conditional zoning language. The $2,000,000 or $3,000,000

payment defendants could have received if the dual conditions were met represents a benefit which is supplemental to the primary benefit of debt relief. We discern no error.

Finally, the Hongkun defendants aver that enforcing this MOU without an indemnification provision would lead to an absurd result because they would receive no benefit from its enforcement. However, under the MOU, the Hongkun defendants receive the financial benefit of having another party relieve them of the responsibility for paying off the EWF mortgage. They would receive an additional financial benefit if plaintiff obtained residential zoning approvals. Again, we cannot improve on the agreement the parties made for themselves. Ibid.

B.

The Hongkun defendants argue the trial court's February 5, 2024 order directing them to pay plaintiff's attorney's fees and costs was erroneous and should be overturned. The record shows the Hongkun defendants chose not to oppose the fee application. In fact, they raise the issue for the first time on appeal. "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation

11

is available . . . ." J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)).

Rule 2:10-2 provides:

> Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

"Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Further, the rule sets "a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient . . . .'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 326 (1971)).

Since the Hongkun defendants failed to oppose the application before the trial judge and failed, in their merits brief, to address "plain error," we decline to consider their argument challenging the award. To the extent that we have not addressed any of defendants' arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

12

A-1695-23