**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3654-23

PETER J. DECARLO,

     Plaintiff,

v.

ANTONIO D'ANGELO and
PLYMOUTH ROCK ASSURANCE
d/b/a HIGH POINT PROPERTY
AND CASUALTY INSURANCE
COMPANY,

     Defendants.

_____

BARRY R. EICHEN and EICHEN
CRUTCHLOW ZASLOW, LLP,

     Appellants,

v.

RICHARD J. ISOLDE and
PELLETTIERI RABSTEIN &
ALTMAN,

     Respondents.

_____

Submitted December 4, 2025 – Decided January 9, 2026

Before Judges Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4878-19.

Eichen Crutchlow Zaslow, LLP, attorneys for appellants Barry R. Eichen and Eichen Crutchlow Zaslow, LLP (Barry R. Eichen, of counsel and on the briefs; Christopher J. Conrad, on the briefs).

Pellettieri Rabstein & Altman, attorneys for respondents Richard J. Isolde and Pellettieri Rabstein & Altman (Richard J. Isolde, of counsel and on the brief).

PER CURIAM

Appellants Barry R. Eichen and Eichen Crutchlow Zaslow, LLP (ECZ) appeal from the July 16, 2024 Law Division order allocating attorneys' fees to ECZ and respondents Richard J. Isolde and Pellettieri Rabstein & Altman (PRA), as a result of plaintiff Peter J. DeCarlo's settlement with defendant Antonio D'Angelo.[1]  We reverse and remand.

I.

On December 6, 2018, DeCarlo was injured in a motor vehicle accident with D'Angelo.  Days later, DeCarlo retained Isolde, then with Gelman, Gelman,

---

[1]  Neither plaintiff nor defendants are part of this appeal.

Wiskow & McCarthy, LLC (GGWM), to represent him on a contingency fee basis. The following month, Isolde sent a letter to Allstate, D'Angelo's insurer, requesting the bodily injury limits on the policy but, according to Isolde, Allstate initially refused to disclose the information. About six months after the motor vehicle accident, DeCarlo's wife suffered a fall, which confined her to a wheelchair and required DeCarlo to be her primary caretaker.

Frustrated by Allstate's refusal to disclose D'Angelo's policy limits, Isolde filed a complaint against D'Angelo and Plymouth Rock, DeCarlo's insurer, on July 2, 2019, which did not include a per quod claim on behalf of DeCarlo's wife. Plymouth Rock was later dismissed from the case without objection because D'Angelo's policy provided the same coverage as Plymouth Rock.

When Isolde left GGWM for PRA in May 2021, the firms agreed PRA would be entitled to any fee or quantum meruit for the cases Isolde worked on. DeCarlo signed a contingency fee agreement with PRA, and Isolde filed a substitution of attorney in June 2021 to reflect his new firm.

In an October 12, 2021 email, Isolde advised Allstate "we have a $100,000 offer of judgment." Upon the close of discovery three days later, Allstate served supplemental interrogatory answers disclosing, for the first time, D'Angelo had a $1,000,000 umbrella policy. On November 3, 2021, Isolde filed an offer of

A-3654-23

judgment for $100,000, noting that sum was "for the policy limits as represented by their attorney that there is no excess or umbrella coverage available to the defendants."  The parties proceeded to arbitration, and the arbitrator awarded $86,000 to DeCarlo.  Isolde then moved for a trial de novo.

On December 16, 2021, DeCarlo informed Isolde he planned to undergo additional surgery.  Isolde then notified Allstate he was increasing the settlement demand from $100,000 to $1,000,000.  In January 2022, DeCarlo underwent lumbar fusion surgery.

On February 14, 2022, Isolde served Allstate with DeCarlo's amended interrogatory answers, to include the operative report and additional medical records.  The same day, Isolde filed a motion to adjourn the trial date and reopen and extend discovery, which the court later granted.

On February 18, 2022, Isolde contacted Allstate's counsel about participating in mediation.  When counsel informed Isolde they were not interested in mediation and maintained their $100,000 offer, Isolde replied the demand remained $1,000,000.

On December 15, 2022, Allstate's counsel advised Isolde he received authorization for mediation.  The same day, Isolde received a letter from ECZ, accompanied by a letter from DeCarlo, prohibiting Isolde from performing any

4

further work on the case and demanding he forward the file to ECZ. On December 21, 2022, an attorney at PRA filed a substitution of attorney for ECZ as DeCarlo's counsel, in which PRA asserted an attorney lien pursuant to N.J.S.A. 2A:13-5.

After DeCarlo sought treatment and evaluation with two additional doctors, ECZ filed an offer of judgment for the $1,100,000 full policy limit on January 4, 2024. Days later, both parties attended mediation. Allstate's initial offer was $300,000, with the caveat DeCarlo reduce his $1,100,000 demand. Eichen conferred with DeCarlo and then ended the mediation.

Two days after the failed mediation, Eichen served Allstate a Rova Farms[2] letter advising that if the policy limit was not honored by February 1, 2024, the offer would be rescinded and the matter would proceed to trial. The following week, the parties settled the matter for $1,095,000.

On January 31, 2024, PRA filed a motion for equitable apportionment of the attorneys' fees, seeking eighty percent. The supporting certification filed by Isolde and opposing certification filed by DeCarlo presented significantly different competing facts, which we highlight for purposes of our decision.

---

[2] Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 496 (1974) (discussing the insurer's obligation to negotiate a settlement within the policy limits).

A-3654-23

Isolde and DeCarlo strongly disagreed about the quality of Isolde's representation as to many aspects of the case. According to Isolde, he explained to DeCarlo and his wife they would not pursue a loss of consortium claim because it was not warranted, but advised they could revisit the issue in the future. In contrast, DeCarlo claimed Isolde never told him his wife had a claim in her own right. DeCarlo stated he inquired about adding his wife to the lawsuit in April 2022, after the statute of limitations on any potential claim had expired.

DeCarlo also claimed he wanted to continue treatment, but Isolde advised him to delay it until after litigation. Isolde contested DeCarlo's characterization, stating he advised DeCarlo not to get further surgeries "unless he really needed them."

DeCarlo claimed Isolde only prepared him for about fifteen minutes for his July 2021 deposition. He alleged that after the deposition, Isolde admonished him for his testimony regarding his wife's accident, telling him he should have lied and said he was his wife's primary caregiver for years prior to the motor vehicle accident. Isolde denied making the comments, stating he told DeCarlo he contradicted himself in a deposition answer.

DeCarlo also claimed Isolde did not prepare him for a second deposition beyond telling him to read the first deposition transcript. Isolde disputed this

A-3654-23

statement, certifying he prepared DeCarlo, who fared much better at the second deposition.

Isolde and DeCarlo also provided competing facts regarding settlement authority and negotiations. Although the umbrella policy was included in Allstate's October 15, 2021 supplemental interrogatory answers, Isolde certified he did not realize the disclosure until Allstate's counsel contacted him on November 3, 2021, after he filed the offer of judgment for $100,000. Isolde said he immediately contacted DeCarlo to advise him of the umbrella policy, but DeCarlo was not interested in any additional surgery and would accept a $100,000 settlement.

In contrast, DeCarlo certified his authorization to settle for $100,000 "was explicitly contingent on that being [defendant's] maximum available coverage." He stated he always wanted the full policy limit and never authorized settlement for less than that amount. He also stated he terminated his relationship with Isolde because he did not think Isolde was honest and believed "his incompetency almost cost [DeCarlo] $1,000,000."

The trial judge considered argument on the motion on April 26, 2024. The judge noted, and Isolde conceded, that Isolde did not keep contemporaneous time records but estimated he worked about 400 hours on the case. The judge

7

also noted ECZ failed to provide a copy of its retainer agreement with DeCarlo but confirmed with Eichen the retainer contained the standard Rule 1:21-7 percentage and dollar limits.

At various times during argument on the motion, the judge and counsel discussed a plenary hearing. The judge stated he only anticipated hearing argument that day, not sworn testimony, but could schedule a plenary hearing. Isolde disputed, among other issues, the amount of work ECZ spent on the case. He argued:

> You can't tell me that I was only going to get $100,000. [Eichen] was trying to tell you straight face that he thinks we would only get $100,000 on this case. I mean, it was already there. It was a fusion surgery. We had reports from the experts. Everything was there. They just swooped in at the end and wanted to collect all the money. They didn't do anything.
>
> They got a narrative report. I mean, they said, oh, we spent three times as much money. I don't even see an accounting of the money. Like, what did they spend three times as much money on? That's why I think I need a plenary hearing.

Eichen also stated a plenary hearing was necessary, among other reasons, to resolve DeCarlo's "spurious allegations" against Isolde, which "came close to" malpractice, but then asked the judge to "call it on the record." Ultimately, the matter was decided on the papers.

8

On July 15, 2024, the judge issued an order and written statement of reasons awarding PRA sixty percent and ECZ forty percent of the total attorneys' fees. The judge cited the four factors outlined in La Mantia v. Durst, 234 N.J. Super. 534, 539-41 (App. Div. 1989), to determine how attorneys' fees should be allocated: the length of time worked on the case relative to the amount of time expended to conclude the case; the quality of representation, including the result of the firm's efforts and the reason the client changed attorneys; the viability of the claim at transfer; and the pre-existing relationship between the members of the firm now competing for the fee. Except for the fourth factor, which he found inapplicable here, the judge concluded each factor supported an award of sixty percent to PRA and forty percent to ECZ. On appeal, ECZ argues the judge erred in his consideration of each of the factors.

## II.

"Appellate review of a trial court's attorney fee determination is deferential." In re Est. of F.W., 398 N.J. Super. 344, 355 (App. Div. 2008). "[A] reviewing court will not set aside an award of attorneys' fees except 'on the rarest occasions, and then only because of a clear abuse of discretion.'" Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 496 (App. Div. 2025) (quoting Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012)).

Generally, an abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). We owe no deference, however, to the legal conclusions of the trial court. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Attorneys' liens are rooted in equitable considerations "intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered." Martin v. Martin, 335 N.J. Super. 212, 222 (App. Div. 2000). The statute for enforcing such liens, N.J.S.A. 2A:13-5, states in pertinent part:

> After the filing of a complaint . . . the attorney . . . who shall appear in the cause for the party instituting the action . . . shall have a lien for compensation, upon his client's action . . . which shall contain and attach to a verdict . . . judgment or final order in his client's favor, and the proceeds thereof in whose hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order . . . . The court in which the action or other proceeding is pending, upon the petition of the attorney . . . may determine and enforce the lien.

To enforce the lien, an attorney must first file a complaint. Mateo v. Mateo, 281 N.J. Super. 73, 79 (App. Div. 1995). This petition or complaint may

10

be filed prior to the conclusion of the underlying action or after the matter is resolved by judgment or settlement. Musikoff v. Jay Parrino's the Mint, L.L.C., 172 N.J. 133, 136 (2002).

Although N.J.S.A. 2A:13-5 does not establish a procedure for enforcement of the lien, we developed the following method:

> The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which [the attorney] relies for the determination and enforcement of [the] alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division . . . .
>
> [Schepisi & McLaughlin, P.A. v. LoFaro, 430 N.J. Super. 347, 356 (App. Div. 2013) (quoting H. & H. Ranch Homes, Inc. v. Smith, 54 N.J. Super. 347, 353 (App. Div. 1959)).]

A request for an attorney's lien "must be brought as a step in the main cause," but should be "tried as a separate and distinct plenary action." Mateo, 281 N.J. Super. at 79. Plenary action is especially appropriate when the fee is

11

contingent because it "more forcefully alert[s] the judge to the complexities of establishing a fair fee under a contingent fee agreement for representing a client in litigation that is incomplete and has an uncertain future." Ibid. "In no event should the matter be tried as a summary proceeding." Ibid. (quoting H. & H. Ranch Homes, 54 N.J. Super. at 354).

Here, PRA asserted an attorney lien in the substitution of attorney filed by ECZ. After the matter resolved, PRA filed a "motion for an equitable apportionment of the total attorney's fee earned." As we previously held, "simply moving for an attorney's lien pursuant to N.J.S.A. 2A:13-5, as distinguished from filing a complaint demanding a fee, is not the proper way to establish an attorney's lien." Martin, 335 N.J. Super. at 223; accord Mateo, 281 N.J. Super. at 79. While the statute provides notice of a potential lien, "in the context of a withdrawing attorney who is handing over a file to a client or a substituting attorney, and thereby relinquishing his common law 'general' or 'retaining' lien, we can understand why additional, specific notice of the intent to rely on N.J.S.A. 2A:13-5 is sensible and warranted." Martin, 335 N.J. Super. at 223-24.

Neither the notice provided in PRA's substitution of counsel nor its motion for equitable apportionment can be considered a "petition" to enforce for

12

purposes of N.J.S.A. 2A:13-5, as both lack the required information we identified in H. & H. Ranch Homes, Inc. The lien reference simply put ECZ, as substituting counsel, on notice that PRA intended to pursue its lien at the appropriate time, place, and manner.

While ECZ does not appeal on these grounds, the procedural infirmities were compounded by the resolution of the matter on the papers. The judge's decision addressed the La Mantia factors, but it did not explain how the judge resolved the deficiencies in timekeeping and billing, the diametrically opposed certifications regarding the quality of legal representation, or the reasons DeCarlo changed counsel. Despite counsel's acquiescence to a more expeditious resolution, these disputed issues of material fact warranted a hearing.

Case law is clear that a fee splitting dispute requires a plenary action and cannot "be tried as a summary proceeding." H. & H. Ranch Homes, 54 N.J. Super. at 354. Because that is what occurred here, we are persuaded the judge misapplied his discretion in deciding the fee splitting in a summary manner and without a plenary hearing. See Schepisi & McLaughlin, 430 N.J. Super. at 359. We are therefore constrained to reverse the order and remand for further proceedings consistent with this opinion. PRA must file a petition within thirty days of the date of this decision.

13

Given the contested factual record and because we reverse the order on procedural grounds, we do not address appellants' substantive claims the judge improperly considered the <u>La Mantia</u> factors.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3654-23