NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3287-22

KEONA PALMER, DUANE ST.
AMOUR, ANA ST. AMOUR,
BRIAN ROWARD, JENNY
ROWARD, JUDITH JONES,
NIGUEL FIGUERO, OTILIO
M. SEDA, JR., CARMEN SEDA,
JAMES COHEN, STEPHEN
BELL, SONIA LENHARDT
BELL, JO-ANN WRIGHT,
DENISE FRAWLEY, THOMAS
FRAWLEY, BRIAN HART,
JESSICA HART, SANDRA
MOONEY, and THOMAS
MOONEY,

      Plaintiffs-Respondents,

v.

FLAGSHIP RESORT
DEVELOPMENT CORP.,
d/b/a FANTASEA RESORTS,

      Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **April 14, 2025** |
| **APPELLATE DIVISION** |

Argued December 3, 2024 – Decided April 14, 2025

Before Judges Smith, Chase and Vanek.

On appeal from the Superior Court of New Jersey,
Law Division, Atlantic County, Docket No. L-1515-
19.

Jordan L. Barbone argued the cause for appellant (Jacobs & Barbone, PA, attorneys; Jordan L. Barbone, on the briefs).

Joe John Solseng (Schroeter Goldmark & Bender) of the Washington bar, admitted pro hac vice, argued the cause for respondents (Flitter Milz, PC, and Joe John Solseng, attorneys; Andrew M. Milz and Joe John Solseng, on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

After trial, a jury found defendant, Flagship Resort Development, liable for violating the Consumer Fraud Act, N.J.S.A. 56:8-1 to -229 (CFA), and the Real Estate Timeshare Act, N.J.S.A. 45:15-16.50 to -16.85 (RETA). The jury awarded damages to nineteen plaintiffs who purchased timeshares from defendant. The trial court, after trebling damages and awarding counsel fees, entered judgment against defendant in the amount of $1,668,423.88.

Plaintiffs had sued defendant, claiming defendant's sales representatives fraudulently induced them into purchasing timeshares by making material misrepresentations during a timeshare presentation, only for plaintiffs to discover later that their purchase agreements and related documents directly contradicted the salespersons' statements.

On appeal, defendant contends the trial court committed reversible error: by failing to grant its motion for summary judgment based on the parol

evidence rule; by rejecting its argument that the two statutes at issue, CFA and RETA, are in conflict; by rejecting its argument that RETA and its supporting regulations are in conflict; by improperly submitting a question of contract interpretation to the jury; and by abusing its discretion in awarding counsel fees to plaintiff.

We affirm.

I.

Defendant owns and manages a resort property located in Atlantic City. As part of its business, defendant markets resort timeshares to prospective customers within a 150-mile radius of its property. It uses various advertising techniques to achieve this, including promotions, face-to-face transactions, and what it calls an "upgrade program." Plaintiffs are nineteen individuals who purchased a "Flagship Timeshare Interval" from defendant, which plaintiff described in their complaint as:

> an arrangement, plan, scheme, or similar device, whether by membership agreement, sale, lease, deed, license, or right to use agreement or by any other means, whereby a purchaser, in exchange for consideration, receives ownership rights in or the right to use accommodations for a period of time less than a full year during any given year on a recurring basis,

but not necessarily for consecutive years at Flagship Resort.[1]

Defendant engaged with plaintiffs in various ways. Plaintiffs either entered sweepstakes or raffles and received written notification from defendant that they won prizes, or defendant's agents contacted plaintiffs directly to inform them of prize winnings. While some plaintiffs understood the prizes required attendance at a timeshare presentation, others did not. Regardless, defendant required all plaintiffs to attend an hours-long presentation at defendant's flagship property in Atlantic City to claim their prizes. All plaintiffs attended these presentations.

Plaintiffs claimed that, during these presentations, defendant made various misrepresentations which induced them to purchase a Flagship Timeshare Interval. These misrepresentations included: the timeshare interval was an investment akin to a conventional real estate interest; the value of the interval would increase over time; the timeshare interval was "readily marketable" and that they could sell it at any time; there would be no increase in the annual maintenance fees over time; they would be able to exchange their intervals; they could book rooms at a resort whenever they wanted; the

---

[1] For ease of reference throughout this opinion, we use the terms, "timeshare", "interval", and "timeshare interval" interchangeably to refer to the Flagship Timeshare Interval.

investment in the timeshare would be good for taxes; the timeshare could be rented out; they could travel anywhere at anytime; and they could sell the timeshare, including back to defendant. Some plaintiffs testified that they were overwhelmed and worn down by the presentation and were not given an opportunity to read or understand the documents before signing. Some were unaware that they were purchasing a timeshare or what a timeshare was.

After purchasing their timeshare intervals, plaintiffs began experiencing a variety of issues. Some plaintiffs were unable to use timeshare at the locations or during the times that they wanted. Others experienced an increase in maintenance fees. When a number of plaintiffs attempted to sell their timeshare intervals, either back to defendant or to others, they were unable to do so.

## A.

As part of their timeshare purchase, each plaintiff signed two documents, a Purchaser's Acknowledgment (PA) and a Purchase and Sale Agreement (PSA). Paragraphs 13 through 15 of the PA state in pertinent part:

> The Purchaser(s) have been informed that neither the seller, or any of its affiliates, is engaged or involved in the resale of any unit interval at The Flagship Resort. Should a unit interval owner wish to pursue a resale, they must secure their own independent Real Estate Broker or handle the transaction his/her/themselves. The Purchaser(s) acknowledge(s) that he/she/they has/have not relied upon any statement as to price to

A-3287-22

be derived from the resale of his/her/their unit interval.

Purchaser(s) represent(s) that this unit interval is being purchased for his/her/their own personal vacation use and employment and not because of any financial or monetary advantage such as rental income, price appreciation or tax advantage. Purchaser(s) further acknowledge that they have entered into this Purchase and Sales Agreement freely and voluntarily, without coercion or undue pressure from employees and/or agents of The Flagship Resort.

The Purchaser(s) understand(s) that The Flagship Resort has gone to great lengths to prepare clear and concise documents that carefully explain in detail your rights and obligations as an owner. Purchaser(s) understand(s) that this Acknowledgement plus the Offering Statement Text . . . Declaration of Condominium, Articles of Incorporation, By-Laws Management Contracts, Estimated Operating Budget, Rules and Regulations, and other documents with which the Purchaser(s) has/have been supplied are carefully designed to review and explain in detail all relevant features of his/her/their purchase and Purchaser(s) should not, under any circumstances, allow him/herself to become confused or misled by any representations or interpretations to the contrary.

Paragraphs 14 and 22 of the PSA states in pertinent part:

ENTIRE AGREEMENT. This [PSA] constitutes the full, final and complete agreement between the parties with respect to the purchase of the Interval, and <u>no representations, claims, statements, advertising, promotional activities made by Seller or Seller's agents or representatives, shall in any way be binding upon the Seller.</u>

[ . . . .]

6

RECEIPT OF CONDOMINIUM DOCUMENTS. By execution of this Purchase Agreement, Buyer acknowledges that Buyer has received a copy of the Restated Supplemental Offering and the schedules and exhibits annexed thereto, including without limitation, the By-Laws and Rules and Regulations of the Interval Association. Buyer has also received a copy of the New Jersey Public Offering Statement of the Condominium together with all amendments thereto and all schedules and exhibits annexed thereto including, without limitation, the Master Deed and By-Laws of the Condominium Association. Buyer also acknowledges, represents and warrants that the purchase of the Interval is made for the Buyer's personal use, and not for investment purposes, without reliance on representations concerning rentals, rent return, tax advantages, depreciation or investment potential, or other monetary or financial advantage, by Seller, its agents, employees or associates. Buyer further warrants that Buyer will not use the Interval as his principal residence.

The PSA also stated timeshare purchasers had three calendar days to consult an attorney and seven calendar days to cancel the contract with a full refund.

B.

Plaintiffs filed a two-count complaint against defendant, alleging violations of RETA and the CFA.[2]

Prior to the close of discovery, defendant moved for summary judgment, arguing that the parol evidence rule barred the admission of any alleged

---

[2] The complaint was later amended to add Otilio M. Seda, Jr., and Carmen Seda as plaintiffs.

misrepresentations made by defendant. The trial court denied the motion without prejudice on the grounds that discovery was not complete.

Defendant moved again for summary judgment after close of discovery, raising the same parol evidence defense. Plaintiffs cross-moved for summary judgment on the violation of RETA, CFA, and the New Jersey Administrative Code claims. The trial court denied both cross-motions.

In denying defendant's second summary judgment motion, the court found that the parol evidence fraud exception applied to this case. The court stated:

> We're talking about a rule in fraud cases . . . which would keep out those allegations in many respects. That's a hard sell for me to interpret the rule when it is being offered for fraud in the inducement [. . . .] [They are] not offered to change the specific provisions of . . . each contract.

Citing to <u>Conway v. 287 Corporate Center Associates</u>,[3] the court centered its analysis on determining the intention of the parties. The court found that, to determine the parties' intentions, it would have to consider the entire agreement in context, including "the situation of the parties, the attendant circumstances, and the object they were thereby striving to attain[.]" The court determined that such a analysis was "not something that we can do

---

[3] 187 N.J. 259, 269 (2006).

. . . on a summary judgment motion[,]" principally because "the factual record need[ed] to be something where a person's credibility c[ould] be examined . . . ."

Both parties sought reconsideration of the summary judgment denial orders. Finding again that the parol evidence rule did not apply in this case,[4] the court denied defendant's motion. However, the court granted summary judgment in favor of plaintiffs on their claims for violation of N.J.S.A. 11:5-9A.6(b)(10).[5]

After a six-day trial, the jury awarded plaintiffs approximately $214,000 in damages for defendant's violation of the CFA. The jury also awarded plaintiffs the same money damages for the RETA violations. The court then voided all of plaintiffs' timeshare contracts.

Defendant successfully moved to vacate the jury's award of damages under RETA and to mold the verdict. However, the trial court denied

---

[4] The trial court relied on <u>Atlantic Northern Airlines v. Schwimmer</u>, 12 N.J. 293, 301 (1953); <u>Ocean Cape Hotel Corp. v. Masefield Corp.</u>, 63 N.J. Super. 369 23 (App. Div. 1960); and <u>Conway</u>, 187 N.J. at 259.

[5] "All public offering statements shall contain a glossary defining the key terms in the offering statement and timeshare plan. This glossary shall be located prior to the narrative portion of the offering statement." N.J.S.A. 11:5-9A.6(b)(10).

defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

The trial court then granted plaintiffs' motion for counsel fees and costs, ordering defendant to pay plaintiffs $722,714. Plaintiffs moved for reconsideration, seeking an increase in the counsel fee award. The court, granting plaintiffs' request, raised the fee award to $996,013.

On May 19, 2023, the court entered final judgment in the amount of $1,668,423.88, then stayed its execution. The final judgment order reflected the sum of CFA treble damages, prejudgment interest and attorneys' fees.

Defendant appeals, raising multiple issues. Defendant contended that the trial court erred, in part, by: rejecting defendant's summary judgment argument that plaintiffs' claims were barred by the parol evidence rule; permitting plaintiffs' claims under both the RETA and the CFA to be considered by the jury; failing to find a conflict between RETA and its accompanying regulations; submitting a legal question to the jury regarding defendant's alleged violation of RETA; submitting evidence to the jury about defendant's alleged violations of certain RETA regulations; and reconsidering plaintiffs' counsel fee award.

We take each of defendant's issues in turn.

## II.

Defendant first argues the trial court erred when it found that the parol evidence rule was inapplicable, and a full record was required to effectively adjudicate plaintiffs' fraud claims. Defendant argues parol evidence should not have been admitted because the written terms of the agreement were clear and unambiguous. We are unpersuaded.

### A.

"[We] review the trial court's grant or denial of a motion for summary judgment de novo, applying the standard used by the trial court." Sackman Enters., Inc. v. Mayor & Council of Belmar, 478 N.J. Super. 68, 75 (App. Div. 2024) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party[,]" and "accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom[.]" Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 134 (App. Div. 2018) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 540 (1995)).

We grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and [where] the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting R. 4:46-2(c)). A fact is material and genuine where "the 'competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 24 (App. Div. 2021) (quoting Brill, 142 N.J. at 540). The trial court's legal analysis or statutory interpretation is not entitled to any deference. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

### B.

"In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Conway, 187 N.J. at 268. The parol evidence rule "is not a rule of evidence but a rule of substantive law. Nor is it a rule of interpretation; it defines the subject matter of interpretation." Restatement (Second) of Conts., § 213 cmt. a (Am. L. Inst.

12

1981).  The rule serves to "render[] inoperative prior written agreements as well as prior oral agreements."  <u>Ibid.</u>  In other words:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted <u>for the purpose of varying or contradicting the writing</u>.
>
> [<u>Filmlife, Inc. v. Mal "Z" Ena</u>, 251 N.J. Super. 570, 573 (App. Div. 1991) (emphasis added) (quoting 3 <u>Corbin on Contracts</u> § 573 (1960)).]

Our Supreme Court takes an "expansive view regarding the admissibility of parol evidence in the interpretation of contracts," which encompasses "an overview of all the terms, <u>the circumstances leading up to the formation of the contract</u>, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct."  <u>Primmer v. Harrison</u>, 472 N.J. Super. 173, 187 (App. Div. 2022) (quoting <u>Conway</u>, 187 N.J. at 269) (emphasis added).

"[T]he introduction of extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence rule."  <u>Walid v. Yolanda for Irene Couture</u>, 425 N.J. Super. 171, 186 (App. Div. 2012) (quoting <u>Ocean Cape Hotel Corp.</u>, 63 N.J. Super. at 377-78).

> Thus, while the parol evidence rule operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument, parol proof of fraud in the inducement is not considered as either

13

additional or substitutionary but rather as indicating that the instrument is, by reason of the fraud, void or voidable. The evidence is admitted, not in order to enforce the contract, but rather to avoid it, or as here, to prosecute a separate action predicated upon the fraud. Thus, a limitation such as . . . [that] herein does not bar evidence of such fraud.

[Id. at 185 (alteration in original) (quoting Ocean Cape Hotel Corp., 63 N.J. Super. at 378).]

Here, plaintiffs are not attempting to vary or alter their contracts. Instead, they seek to void their contracts because they allege that they were fraudulently induced to enter their contracts—the very situation where the parol evidence exception applies. On the other hand, defendant advocates for a legal bait-and-switch[6] in which it offers certain guarantees during its sales pitch, only to explicitly contradict those guarantees in its contracts. If we were to accept defendant's contention, we would, in effect, give license to the use of the parol evidence rule as a sword to aid and abet deceitful sales practices. We decline to do so.

Defendant's attempt to analogize this case to Filmlife is unsuccessful. Filmlife specifically dealt with a party to a contract that attempted to use extrinsic evidence "to vary the intent of the parties as expressed in writing[.]"

---

[6] "A sales practice whereby a merchant advertises a low-priced product to lure customers into the store only to induce them to buy a higher-priced product." Black's Law Dictionary 137 (7th ed. 1999).

251 N.J. Super. at 576. These are not the facts before us. Plaintiffs do not argue for a different interpretation of various contract terms, as the plaintiffs did in Filmlife. Here, plaintiffs contend that defendant's conduct in fraudulently inducing them to buy timeshares voids the agreement. We find no error.

## III.

Defendant next argues the RETA and the CFA conflict with each other, and that the trial court erred when it instructed the jury on both statutes. Defendant argues RETA's plain language at N.J.S.A. 45:15-16.55 alone controls in the face of a conflict between the statutes. We disagree.

## A.

On questions of statutory interpretation and jury instruction, our standard of review is de novo. State by Comm'r of Transp. v. St. Mary's Church Gloucester, 464 N.J. Super. 579, 584 (App. Div. 2020) ("On appeal, issues of statutory interpretation, considered questions of law, are reviewed de novo."); Fowler v. Akzo Nobel Chems., Inc., 251 N.J. 300, 323 (2022) ("Whether the trial court correctly instructed the jury on the adequacy of the product warnings and medical causation are issues of law that we review de novo.").

"It is a well[-]established precept of statutory construction that when two statutes conflict, the more specific controls over the more general." In re Restrepo, Dep't of Corr., 449 N.J. Super. 409, 419 (App. Div. 2017) (internal quotation marks omitted) (quoting N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591 (1995)); see also Bergen Cnty. PBA Loc. 134 v. Donovan, 436 N.J. Super. 187, 199 (App. Div. 2014) ("It is also a general principle of statutory construction that specific laws prevail over inconsistent general laws.") (emphasis added).

Our Supreme Court has set a high bar for preemption of the CFA, recognizing that "[i]n the modern administrative state, regulation is frequently complementary, overlapping, and comprehensive." Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255, 271 (1997). The Court reasoned that:

> In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied . . . that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that the conflict must be patent and sharp, and [it] must not simply constitute a mere possibility of incompatibility.

A-3287-22

> [Id. at 270 (emphasis added); accord Shaw v. Sand, 460 N.J. Super. 592, 611 (App. Div. 2019) (emphasis added).]

We note that "[a]bsent a nearly irreconcilable conflict, to allow one remedial statute to preempt another or to co-opt a broad field of regulatory concern, simply because the two statutes regulate the same activity, would defeat the purposes giving rise to the need for regulation." Lemelledo, 150 N.J. at 271. Additionally, any potential conflict between statutes must be assessed in terms of "the nature of the claims brought, and not the nature of the damages sought. . . ." Sun Chem. Corp. v. Fike, 243 N.J. 319, 325 (2020).

## B.

Defendant posits that a direct conflict between the two statutes exists, because a RETA violation requires a finding of intent while a CFA violation does not. Defendant further contends this conflict "created undeniable confusion that resulted in the jury's award under both [RETA and the CFA]." Given the alleged conflict, defendant argues that RETA's plain language alone controls.

Our analysis "necessarily begins with the text of the statutory provisions at issue." State by Comm'r of Transp., 464 N.J. Super. at 584; see also Bandler v. Landry's, Inc., 464 N.J. Super. 311, 319 (App. Div. 2020) (stating

A-3287-22

the court must "look first to the express language of the statutes" to determine whether there is a "nearly irreconcilable conflict" between the two).

Count I of the plaintiff's complaint is grounded in the CFA. The CFA was enacted to "confer on the Attorney General the broadest kind of power to act in the interest of the consumer public[,]" and was subsequently amended to authorize a private right of action. The Court also recognized that the CFA's history "is one of constant expansion of consumer protection." Sun Chemical, 243 N.J. at 329-30 (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997)). "The statute has been 'repeatedly amended and expanded . . . often by adding sections to address particular areas of concern and to include them specifically within its protective sweep.'" Ibid. (quoting Czar, Inc. v. Heath, 198 N.J. 195, 201 (2009)). Ultimately, the Court acknowledged that "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly." Ibid. (quoting Lemelledo, 150 N.J. at 264).

N.J.S.A. 56:8-2 states in pertinent part:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been

18

misled, deceived or damaged thereby, is declared to be
an unlawful practice . . . .

The CFA defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

N.J.S.A. 56:8-19 creates a private right of action under the CFA and authorizes treble damages. It states:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, <u>in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest</u>. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
>
> [N.J.S.A. 56:8-19 (emphasis added).]

N.J.S.A. 56:8-2.13 states that the CFA is intended to supplement other remedial legislation:

> The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be

19

construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.

Count II of the plaintiffs' complaint is grounded in RETA.  N.J.S.A. 45:15-16.70 states in pertinent part:

> a. A developer or other person offering a timeshare plan shall not:
>
> (1) Misrepresent a fact material to a purchaser's decision to buy a timeshare interest;
>
> (2) Predict any increase in the value of a timeshare interest represented over a period of time, excluding bona fide pending price increases by the developer;
>
> (3) Materially misrepresent the qualities or characteristics of accommodations or the amenities available to the occupant of those accommodations;
>
> (4) Misrepresent the length of time accommodations or amenities will be available to the purchaser of a timeshare interest; or
>
> (5) Misrepresent the conditions under which a purchaser of a timeshare interest may exchange the right of the purchaser's occupancy for the right to occupy other accommodations.
>
> b. A developer or other person using a promotion in connection with the offering of a timeshare interest shall clearly disclose all of the following:
>
> (1) That the purpose of the promotion is to sell timeshare interests, which shall appear in bold face or other conspicuous type on all promotional materials;

(2) That any person whose name or address is obtained during the promotion may be solicited to purchase a timeshare interest;

(3) The name of each developer or other person trying to sell a timeshare interest through the promotion, and the name of each person paying for the promotion if different from the developer;

(4) The complete details of participation in the promotion;

(5) The method of awarding premiums or other benefits under the promotion;

(6) A complete and fully detailed description, including approximate retail value of each premium or benefit under the promotion if the retail value of the premium or benefit is over $50;

(7) The quantity of each premium to be awarded or conferred;

(8) The date by which each premium or benefit will be awarded or conferred; and

(9) Any other disclosures required by the commission pursuant to regulation.

N.J.S.A. 45:15-16.80(a) provides for a private cause of action and authorizes double damages. It states:

> Any person who suffers any ascertainable loss of moneys as a result of the failure of another to comply fully with the provisions of this act may bring an action or assert a counterclaim in any court of competent jurisdiction. In any action filed under this

section in which a defendant is found to have knowingly engaged in any false, deceptive, misleading promotional or sales methods . . . made an intentional misrepresentation or concealed a material fact in an application for registration . . . the court shall, in addition to any other appropriate legal or equitable remedy, award double the damages suffered, and court costs, including reasonable attorney's fees.

[N.J.S.A. 45:15-16.80(a).]

N.J.S.A. 45:15-16.55 mandates that RETA controls in the event of conflict with another law or regulation. It states, "between the provisions of this act and the provisions of any other law, ordinance or regulation governing or purporting to govern the creation, registration, disclosure requirements or sale of timeshare interests . . . the provisions of this act shall control." N.J.S.A. 45:15-16.55.

The Supreme Court has considered whether there is a conflict between the CFA and another statute. In Sun Chemical, the Court held that the Products Liability Act, N.J.S.A. 2A:58C-1 to -224 (PLA), did not preempt the CFA. 243 N.J. at 325. In that case, plaintiff purchased an "explosion isolation and suppression system" from the defendant. Id. at 326. However, the day after defendant installed the system, an explosion occurred at the Sun facility, causing property damage and injuring seven employees. Ibid. Sun filed suit in federal court alleging that defendant violated both the CFA and PLA.

Eventually, the Third Circuit certified the question of which statute controlled to the New Jersey Supreme Court. Id. at 327.

The Court held that the CFA and the PLA "are intended to govern different conduct and to provide different remedies for such conduct. There is thus no direct and unavoidable conflict between the CFA and PLA." Id. at 335-36. The Court cited to the legislative history and the plain language of the CFA and the PLA and concluded that:

> If a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the PLA with damages limited to those available under that statute; CFA claims for the same conduct are precluded. But nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product. Indeed, the CFA is expressly "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State." N.J.S.A. 56:8-2.13. Said differently, if a claim is based on deceptive, fraudulent, misleading, and other unconscionable commercial practices, it is not covered by the PLA and may be brought as a separate CFA claim.
>
> [Id. at 336-37.]

Here, defendant contends the Court's reasoning in Sun Chemical supports preemption of the CFA, where, as is the case here, "the same conduct [is] being alleged as establishing both causes of action." Defendant argues that RETA, the more specific statute, controls because the CFA more generally

regulates the sale of "merchandise." We disagree. We conclude no conflict between RETA and CFA exists. Defendant's conflict claim is based upon RETA's requirement that a plaintiff prove intent to succeed, and it is necessarily grounded in the plain language of both statutes. The record shows no specialized or technical areas in plaintiffs' fraud in the inducement claims which would prevent the CFA's general provisions from applying. Additionally, we are unpersuaded by defendant's argument before us that the alleged statutory conflict between RETA and CFA resulted in jury confusion. Our review of the extensive record shows the opposite. The trial court recognized the difference between the statutes and clearly instructed the jury that RETA required them to find intent and that the CFA had no such requirement. The trial court properly presented each statute to the jury.

Defendant next relies on the plain language of N.J.S.A. 45:15-16.55 to argue that RETA alone controls and the CFA should not have been charged by the trial court. We are not convinced. RETA's legislative history reveals that the Legislature did not intend to preempt the CFA when it passed RETA. Both the Senate and Assembly bills' sponsor's statements state the bills "remove[] the regulation of timeshares from the 'Planned Real Estate Development Full Disclosure Act' and the 'Real Estate Sales Full Disclosure Act,'" and that the bills' purpose was to "resolve issues regarding shared authority between

24

departments by placing all regulatory authority within the New Jersey Real Estate Commission. This restructuring . . . provide[s] a single regulatory framework for multi-site timeshare offering[s], which have components located both within and outside the State." Sponsor's Statement to S. 1321, at 39-40 (L. 2006, c. 63); Sponsor's Statement to A. 2705, at 39-40 (L. 2006, c. 63) It follows that when N.J.S.A 45:15-16.55 references "any other law, ordinance or regulation governing or purporting to govern the creation, registration, disclosure requirements or sale of timeshare interests," it refers to the Planned Real Estate Development Full Disclosure Act and the Real Estate Sales Full Disclosure Act. We see no reason to speculate that the Legislature intended to go beyond these two Acts and preempt the CFA or other statutes dedicated to consumer protection. The trial court properly presented plaintiff's claims under each statute to the jury.

## IV.

Defendant argues next that the trial court erred when it failed to address and resolve what it contends is a conflict between RETA and its accompanying regulations with regard to delivery of the public offering statement (POS) to timeshare purchasers. The thrust of defendant's argument is that, by RETA's plain language, a purchaser of a timeshare interval is only entitled to receive a copy of the POS "at the time of purchase," and the purchaser is not entitled to

a "reasonable opportunity to read the same" before executing a purchase contract. We find this argument unpersuasive.

Defendant raises a purely legal issue, which is subject to de novo review. See State v. Comm'r of Transp., 464 N.J. Super. at 584 ("On appeal, issues of statutory interpretation, considered questions of law, are reviewed de novo."). "It is well settled that 'when the provisions of the statute are clear and unambiguous, a regulation cannot amend, alter, enlarge or limit the terms of the legislative enactment.'" Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 293 (App. Div. 2014) (quoting L. Feriozzi Concrete Co. v. Casino Reinvest. Dev. Auth., 342 N.J. Super. 237, 250-51 (App. Div. 2001)); accord Petro v. Platkin, 472 N.J. Super. 536, 559-60 (App. Div. 2022). "Where there is a conflict, the statute prevails over the regulation." Flinn, 436 N.J. Super. at 294 (quoting L. Feriozzi Concrete Co., 342 N.J. Super. at 251); see N.J.S.A. 45:15-16.55 (stating that if RETA conflicts with a "regulation governing or purporting to govern the creation, registration, disclosure requirements or sale of timeshare interests in a component site" that RETA will control). Finally, when interpreting a statute, courts "give words their plain meaning and apply the statutory language sensibly." All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc., 236 N.J. 431, 442 (2019) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). "Additionally, we interpret statutes 'in context with

26                                                                        A-3287-22

related provisions,' since 'the context is [often] determinative of the meaning.'" In re Registrant H.D., 241 N.J. 412, 418-19 (2020) (internal citation omitted) (first quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005); and then quoting McDonald v. Bd. of Chosen Freeholders, 99 N.J.L. 170, 172 (E. & A. 1923) (second)).

We consider the relevant section of the statute and its corresponding regulation.  N.J.S.A. 45:15-16.59(a) states:

> A developer shall: (1) prepare a public offering statement; (2) provide the statement to each purchaser of a timeshare interest in any timeshare plan at the time of purchase; and (3) fully and accurately disclose those facts concerning the timeshare developer and timeshare plan that are required by this act or by regulations promulgated by the commission.
>
> The public offering statement shall be in writing and dated and shall require the purchaser to certify in writing that the purchaser received the statement. Upon approval of the commission, the developer may offer to deliver the public offering statement and other documents on CD-ROM format, Internet website or other electronic media if the purchaser consents.
>
> [(Emphasis added).]

N.J.A.C. 11:5-9A.6(a) states, "[n]o person[7] shall dispose of any timeshare interest in a registered timeshare plan unless he or she delivers a

_____

7  The regulations define "person" as "a natural person, corporation, limited liability company, partnership, joint venture, association, estate, trust,

current public offering statement <u>and affords the purchaser a reasonable opportunity to read the same before the purchaser signs the contract or purchase agreement</u>." (Emphasis added).

Delivery of the POS is also addressed in RETA's remedies section. N.J.S.A. 45:15-16.80. This section authorizes courts to rescind a timeshare contract if a purchaser can show that "a developer has failed to provide a purchaser a copy of the current [approved] public offering statement . . . prior to the execution of the contract or agreement." N.J.S.A. 45:15-16.80(b).

Here, the two relevant statutes that discuss delivery of the POS—N.J.S.A. 45:15-16.59(a) and N.J.S.A. 45:15-16.80—when read together, reveal the Legislature's intent was for a timeshare purchaser to receive a copy of the POS at the time of purchase, before the purchaser executes any contracts or agreements.

We reject defendant's argument that plaintiff is not entitled to an opportunity to review the POS before signing a purchase agreement because the statutes do not expressly call for it. Such an interpretation of the two sections would lead to an absurd result, as it would allow a timeshare seller to satisfy the law by giving a purchaser a crucial document without permitting

---

government, governmental subdivision or agency, or other legal entity or any combination thereof." N.J.A.C. 11:5-9.2.

them to review the contents of that document before signing. See JWC Fitness, LLC v. Murphy, 469 N.J. Super. 414, 425 (App. Div. 2021), certif. denied, 251 N.J. 201 (2022) (quoting State v. Morrison, 227 N.J. 295, 308 (2016)) ("We should 'not adopt an interpretation of the statutory language that leads to an absurd result or one that is distinctly at odds with the public-policy objectives of a statutory scheme.'"). N.J.A.C. 11:5-9A.6(a) merely marries these two provisions and clarifies the Legislature's intent that the developer must deliver the POS before any agreements are executed so the purchaser has an opportunity to review the document.

We conclude the trial court did not err when it interpreted the statutes to require that a purchaser be given a reasonable opportunity to review the POS before signing.

V.

Defendant argues that the trial court erred when it instructed the jury to determine whether defendant had knowingly induced the plaintiffs to agree to a waiver of compliance with RETA. We find that the trial court's instruction was not erroneous.

At trial, the court instructed the jury as follows:

> You must decide whether each plaintiff has proven that defendant, through use of its [PA] or Annual Use Form or similar exculpatory statements, knowingly offered and had a purchaser agree to a waiver of the

29

defendant's compliance with the provisions of [RETA]. If plaintiffs have proven by a preponderance of the evidence that those acts took place and therefore violated the statute, you must find the waiver(s) are void.

The verdict sheet identified individual statements from the contract documents for the jury to vote on:

A. "By signing below, the Sellers and Purchasers acknowledge they received the Consumer [I]nformation Statement on New Jersey Real Estate Relationships form [sic] the brokerage firm involved in this transaction prior to the first showing of the property."

B. "[N]o representations, claims, statements, advertising, promotional activities made by Seller or Seller's agents or representatives, shall in any way be binding upon the seller."

C. "Buyer also acknowledges, represents and warrants that the purchase of the Interval is made for the Buyer's personal use, and not for investment purposes, without reliance on representations concerning rentals, rent return, tax advantages, depreciation or investment potential, or other monetary or financial advantage, by Seller, its agents, employees or associates."

D. "The Purchaser(s) acknowledge(s) that he/she/they has/have not relied upon any statement as to price to be derived from the resale of his/her/their rental unit."

E. "Purchaser(s) further acknowledge that they have entered into this Purchase and Sale Agreement freely and voluntarily, without coercion or undue pressure from employees and/or agents of the

30

Flagship Resort."

F. "Purchaser(s) understand(s) that Purchaser(s) should not, under any circumstances, allow him/herself to become confused or misled by any representations or interpretations to the contrary."

G. "The Owner acknowledges that they have not relied upon any statement as to resale value of their week."

H. "Owner represents that this week is being purchased for their own personal vacation use and enjoyment not because of any financial or monetary advantage."

I. "Oral representations are not to be relied upon."

The jury voted unanimously that each of these statements were, or purported to be, a waiver of compliance with RETA.

"Jury charges are essential to a fair trial." Piech v. Layendecker, 456 N.J. Super. 367, 376 (App. Div. 2018) (citing Velazquez v. Portadin, 163 N.J. 677, 688 (2000)). Indeed, "[w]ithout a proper jury charge, a jury will not have a proper road map to guide them in their deliberations." Ibid. (citing Das v. Thani, 171 N.J. 518, 527 (2002)). "Erroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. McKinney, 223 N.J. 475, 495-96 (2015) (alteration in original) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). "Nonetheless, not every improper jury charge warrants reversal and a new trial. 'As a general matter,

31

[appellate courts] will not reverse if an erroneous jury instruction was 'incapable of producing an unjust result or prejudicing substantial rights.'" Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (alteration in original). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Baum, 224 N.J. 147, 159 (2016) (internal quotation marks omitted) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

We note that defendant did not object to the trial court's instruction, therefore we determine whether the court's jury instruction on RETA's anti-waiver provision was "clearly capable of producing an unjust result." R. 2:10-2; Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 317-18 (2006). "Without an objection at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'" Willner v. Vertical Realty, Inc., 235 N.J. 65, 79 (2018) (quoting State v. Montalvo, 229 N.J. 300, 320 (2017)).

With regard to jury charges, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring

about an unjust result.'" Montalvo, 229 N.J. at 321 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

Here, the trial court properly instructed the jury on the question of whether any terms in the purchase agreement purported to be a waiver of the provisions of RETA. The jury had the benefit of a voluminous trial record to make these findings. Its task was to find whether, based on the evidence it had before it, defendant knowingly induced the plaintiffs to agree to a waiver of compliance with RETA. We discern no error by the trial court in giving this instruction.

VI.

Defendant's next argument is two-fold, positing that the court: (a) committed error when it admitted evidence regarding potential violations of various administrative regulations; and (b) erred when it posed these regulations to the jury as separate causes of action, and not simply as evidence to support plaintiffs' cause of action under RETA. We are unpersuaded.

Addressing the first claim, we note the record shows defendant did not object to plaintiffs' proffers concerning defendant's alleged regulatory violations during trial. It follows that we consider this argument under the plain error standard.

33

The record shows that the question first arose during plaintiff's unsuccessful motion to amend their complaint in July 2021. Defendant failed to object to the allegations contained in plaintiffs' proposed second amended complaint about its potential violation of certain administrative regulations. When the issue arose one year later at pre-trial conference, defendant again failed to object to plaintiff's proffer of that evidence, with counsel simply indicating they would defend the "technical violations" asserted by plaintiffs.

The issue came up a third time during the charge conference. Defendant advocated for the very position that it now calls erroneous, that the regulations "can be used by the jury as evidence in evaluating sales and promotional methods." Defendant cannot now complain that the introduction of evidence relative to the administrative regulations was prejudicial or that it led to an unjust result. See N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 340 (2010) (quoting Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 503 (1996)) ("The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error."). It follows that there was no error in the trial court's decision to permit evidence of defendant's violation of administrative regulations to go to the jury.

We turn to the second claim, where defendant argues that the court erred when it presented various administrative code violations, which were "promulgated by the Real Estate Commission but not set forth in the RETA," to the jury as "independent causes of action" on the verdict sheet.

"The 'verdict sheet constitutes part of the trial court's direction to the jury.'" Comprehensive Neurosurgical, PC v. Valley Hosp., 257 N.J. 33, 75-76 (2024) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)). Accordingly, "[d]efects in the verdict sheet are reviewed on appeal under the same 'unjust result' standard of Rule 2:10-2 that governs errors in the jury charge." Id. at 76 (quoting Galicia, 210 N.J. at 388).

The record shows the administrative code provisions were presented to the jury along with the relevant statutory provisions of RETA as a basis for the jury to find RETA violations. Indeed, RETA clearly states that a sales agent[8] who sells timeshare intervals in New Jersey shall comply with the provisions of N.J.S.A. 45:15-1 to -29.5, as well as the regulations adopted pursuant to RETA and other regulations adopted by the Real Estate Commission. N.J.S.A. 45:15-16.69(a). RETA's plain language requires defendant's sales personnel to

---

[8] RETA defines a "sales agent" as "any person who performs within this State as an agent or employee of a developer any one or more of the services or acts as set forth in this act, and includes any real estate broker, broker salesperson or salesperson licensed pursuant to [N.J.S.A. 45:15-1 to -29.5] or any person who purports to act in any such capacity." N.J.S.A. 45:15-16.51.

comply with the regulations. It follows, then, that a violation of the regulations promulgated under the authority of Title 45, Chapter 15—which includes RETA as well as other statutes—constitutes a violation of RETA itself, as the failure to comply with a regulation would result in a failure to comply with N.J.S.A. 45:15-16.69(a).

In short, the administrative regulations went to the jury as components of an overall RETA violation, not as separate causes of action upon which damages could be awarded. Indeed, the record shows the jury awarded damages to the plaintiffs based on a RETA violation, and not for each individual statutory and regulatory provision for which they made a finding.

We conclude the trial court did not commit plain error in the instructions it submitted to the jury on this question.

VII.

Finally, defendant argues the trial court abused its discretion when it reconsidered its prior order granting plaintiffs' counsel fees and costs and subsequently increased plaintiffs' counsel fee award from $722,714 to $996,013. We disagree.

"[A] motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015).

36

"[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). A motion for reconsideration in and of itself is limited, and should only be utilized "for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

"Trial courts have considerable latitude in resolving fee applications, and a reviewing court will not set aside an award of attorneys' fees except 'on the rarest occasions, and then only because of a clear abuse of discretion.'" Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "Although the ordinary 'abuse of discretion' standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

After trial, the court conducted a comprehensive lodestar analysis and ordered that plaintiffs were entitled to a total award of $722,714 in attorneys' fees and costs. Plaintiffs moved for reconsideration of the fee order and decision. Upon reconsideration, the court awarded plaintiffs $788,415 in fees and $10,494 in costs. With the twenty-five percent fee enhancement, plaintiffs' total judgment before interest amounted to $996,013.

Our review reveals that the trial court's fee award analysis on reconsideration, while not exhaustive, was straightforward, sound, and well supported by substantial credible evidence in the record. The court identified issues in its original fee award which, upon reflection, "did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi, 414 N.J. Super. at 288. The trial court then properly reconsidered its prior fee order and found it appropriate to enhance the fee award. Given our standard of review, we defer to the trial court's findings and discern no unjust result flowing from the reconsidered award. Chokshi, 424 N.J. Super. at 367.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-3287-22