**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3605-23
     A-1005-24
     A-1723-24

STEVEN J. KARVELLAS,

   Plaintiff-Respondent,

v.

STEPHEN E. SWEENEY and
LEREGAZZI, LLC,

   Defendants-Appellants.

_____

Submitted October 1, 2025 – Decided October 20, 2025

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2604-20.

Brach Eichler, LLC, attorneys for appellants (Bob Kasolas and Mark E. Critchley, on the briefs).

Brown Moskowitz & Kallen, PC, attorneys for respondent (Kenneth L. Moskowitz and Michele-Lee Shapiro, of counsel and on the briefs).

PER CURIAM

Defendants Stephen E. Sweeney and LeRegazzi, LLC appeal from three post-judgment orders: a June 20, 2024 order, an October 28, 2024 order, and a January 30, 2025 order entered in favor of plaintiff Steven J. Karvellas.[1] After the entry of a judgment awarding plaintiff the sum of $274,260.64, plus post-judgment interest, plaintiff filed several post-judgment motions for relief in aid of litigant's rights. In his post-judgment motions, plaintiff asserted defendants refused to cooperate in post-judgment discovery aimed at plaintiff's efforts to collect the judgment. Based on defendants' contumacious conduct and refusal to cooperate with plaintiff's post-judgment discovery demands, the trial judge entered three separate orders granting relief in aid of litigant's rights and awarding plaintiff a total of $85,506.22 in attorney's fees. We affirm.

The facts leading to the entry of judgment against defendants are set forth in Karvellas v. Sweeney, No. A-0723-23 (App. Div. Nov. 19, 2024). We need not repeat those facts, which affirmed the entry of judgment in favor of plaintiff and against defendants. Therefore, we limit our recitation of the facts to those that lead to the entry of the three post-judgment orders challenged by defendants. The judge who presided over the bench trial and entered the judgment against

---

[1] In an April 17, 2025 order, we consolidated defendants' separate appeals from these orders.

defendants also issued the post-judgment orders that are the subject of this consolidated appeal.

The June 20, 2024 Order

On September 21, 2023, plaintiff served defendants with information subpoenas. After defendants failed to respond, plaintiff moved to enforce litigant's rights under Rule 1:10-3, which permits litigants to seek relief in the event of another party's noncompliance with proceedings. In a November 27, 2023 order, the judge granted plaintiff's motion and compelled defendants to provide the requested information within ten days.

The judge initially denied plaintiff's request for attorney's fees associated with the motion because plaintiff's counsel failed to provide a supporting affidavit of legal services. After receiving a certification in support of legal services, the judge entered a February 2, 2024 order awarding $10,187.50 in attorney's fees and costs incurred by plaintiff in enforcing litigant's rights. The judge also awarded post-judgment interest on the awarded attorney's fees.

After plaintiff applied for an arrest warrant due to defendants' noncompliance with the November 27, 2023 order, defendants responded to the subpoenas.

3

After receiving defendants' subpoena responses, plaintiff subpoenaed two banks listed in the responses. Upon receipt of the banks' subpoena responses, plaintiff concluded Sweeney failed to disclose his ownership interest in other entities with financial accounts at another bank. Plaintiff then subpoenaed Sweeney's financial records from a third bank. Defendants moved to quash this subpoena. The judge denied defendants' motion, finding Sweeney's "own evasive conduct" necessitated the subpoena directed to the third bank.

In the interim, plaintiff subpoenaed Sweeney's accountant, Michael Moskowitz, requesting production of documents and scheduling his deposition for May 17, 2024. Following a conversation with Moskowitz, plaintiff's counsel confirmed Moskowitz was not represented by an attorney and that he agreed to be deposed on May 22, 2024. Two days before the scheduled deposition, Moskowitz advised he was represented by defendants' counsel. Defense counsel notified plaintiff's counsel: "Please be advised that due to our recent engagement as counsel for . . . Moskowitz, the deposition . . . will have to be adjourned and rescheduled so that we can review the [s]ubpoena with our client and discuss the matter in full with him." Plaintiff's counsel responded he had no choice but to accept defense counsel's unilateral adjournment of Moskowitz's deposition, and rescheduled the deposition for May 28, 2024. Plaintiff's counsel

4

further advised: "Should you and/or your clients be unprepared or unwilling to proceed with the deposition at that time, we will make the appropriate application to enforce . . . [plaintiff]'s litigant's rights."

Plaintiff also served Sweeney with a deposition notice for June 18, 2024. The notice included nineteen document requests. Defendants' counsel stated he was unavailable on June 18. Plaintiff's counsel sought confirmation from defense counsel that he would be available on an alternate date to proceed with the depositions of Sweeney and Moskowitz. In a confirming email, plaintiff's counsel stated: "Unless we hear from you, we will understand that you will not produce either witness as scheduled, and we will then make the appropriate application for the [c]ourt's intervention."

Because plaintiff's counsel did not hear from defense counsel, plaintiff moved to compel the depositions of Sweeney and Moskowitz, enforce litigant's rights, and recover attorney's fees and costs under Rule 1:10-3. Defendants cross-moved to quash the subpoena to depose Moskowitz and limit the scope of Sweeney's deposition. In seeking an additional $5,410 in attorney's fees for defendants' "frivolous cross-motion," plaintiff asserted "the motion practice has been necessitated, and fees have been incurred, only because of [defendants']

contemptuous bad faith and continuing conduct to conceal assets to satisfy the [j]udgments."

In the June 20, 2024 order, the judge found defendants violated litigant's rights and required Sweeney and Moskowitz appear for their deposition by a date certain. Pursuant to Rule 1:10-3, the judge awarded $30,199.22 in attorney's fees to plaintiff and post-judgment interest on the awarded amount. The judge explained the award of attorney's fees was "warranted in the interest of justice, as [plaintiff] would not have had to file these subpoenas or motions (and in turn, incurred the legal fees associated with such litigation) had [Sweeney] simply complied with [plaintiff]'s initial post[-]judgment discovery requests." The judge denied defendants' cross-motion to quash Moskowitz's subpoenaed deposition and limit Sweeney's deposition.

On July 19, 2024, defendants appealed from the June 20, 2024 order, asserting the judge abused his discretion in enforcing litigant's rights and awarding $30,199.22 in attorney's fees.

The October 28, 2024 Order

Because defendants failed to produce any responsive documents pursuant to the court's prior orders, the judge held a hearing on August 8, 2024. At the hearing, the judge expressed "concern about the lack . . . of cooperation" and

reiterated "the law sets forth responsibilities, despite [defendants'] appeal, to participate in [plaintiff]'s search for the assets in order to satisfy the judgment." The judge explained defendants "attempted to hide and avoid sharing the information that . . . [p]laintiff [wa]s rightfully entitled to in order to seek payment on [his] judgment."

Because defendants failed to produce information responsive to the subpoenas and the deposition notices, plaintiff requested leave to file a motion holding defendants in contempt. The judge allowed the motion, stating he did not know why plaintiff delayed in requesting such relief based on the prior motion practice. Additionally, the judge ordered defendants to provide the requested information, explaining he was "frustrated by what has been an ongoing and consistent attempt to not abide by the [c]ourt's rulings."

Further, the judge ordered Sweeney's deposition and instructed plaintiff's counsel to exercise his judgment with respect to filing a contempt motion. The judge stated:

> If [plaintiff] has to continue, as you said, to spend money with his lawyer to chase down information that you have a right to have in pursuit of a judgment and this is whittling away at the actual judgment itself through stalling tactics and techniques, then it's unjust. And I will level the playing field if I make those findings during the appropriate motion. Because

A-3605-23

[plaintiff] should not be spending money on attorney's fees.

Now spending money on attorney's fees to collect on a judgment with a cooperating [d]efendant providing the information may be just part of doing business, obtaining a judgment and then seeking a collection. But when you . . . factor in what appears to this [c]ourt to be intentional acts of avoidance causing more attorney's fees, then I think that changes the game.

On August 20, 2024, defendants obtained a supersedeas bond in the amount of $346,993.24 to file an appeal from the original judgment and the June 20, 2024 order. According to defendants, the "bond cover[ed] the principal, accrued interest and anticipated interest into March 2025." Additionally, defendants tendered a bank check for $10,187.50 toward payment of the judgment with interest.

The next day, defendants moved for a stay pending appeal and reconsideration of the June 20, July 23, and August 19, 2024 orders. Plaintiff cross-moved to enforce litigant's rights and requested attorney's fees, production of documents, and daily sanctions until defendants complied with the court's orders. Plaintiff included a certification of legal services, seeking additional attorney's fees in the amount of $66,719.

The judge denied defendants' stay motion and reconsideration of the June 20, July 23, and August 19, 2024 orders. The judge ordered defendants to

8

produce all responsive documents by November 8, 2024. Further, the judge found the proposed supersedeas bond defective and the amount bonded insufficient. The judge held defendants in contempt of his July 23 and August 19 orders, but denied plaintiff's request for daily sanctions. The judge also found defendants violated litigant's rights by "unfairly caus[ing plaintiff] to expend significant resources in attempting to compel [defendants'] compliance . . . and obstruct[ing plaintiff] from obtaining the post-[j]udgment discovery to which [plaintiff was] . . . entitled." The judge awarded $46,008 in attorney's fees to plaintiff with post-judgment interest on that amount.

In a twenty-one-page rider accompanying this order, the judge set forth his reasons for rejecting defendants' proposed supersedeas bond. The judge explained the bond did not meet the requirements of Rule 1:13-3 and could not be accepted as a surety bond for the judgments on appeal under Rule 2:9-6. The judge further concluded the bond in the amount of $346,993.24 would "not secure the plaintiff throughout the pendency of the two pending appeals." He determined "plaintiff's calculations to be accurate and reflective of the amount of time it will take for [the] Appellate Division to conclude its' review." Therefore, the judge found the bond amount should be increased to $355,000. The judge also declined to reconsider the June, July, and August orders awarding

attorney's fees, reasoning defendants cited no authority or facts evidencing any

abuse of discretion. As the judge explained:

> [T]he interests of justice required this [c]ourt to provide redress to plaintiff within those [o]rders due to . . . Sweeney's pervasive contempt on behalf of himself and LeRegazzi, which he carried on long before he entertained the idea of obtaining a bond. It is clear to this [c]ourt that . . . Sweeney's attempts to secure the bond at this late stage of the litigation provides further justification for this [c]ourt's previous rulings; that . . . Sweeney was flouting this [c]ourt's [o]rders and clearly trying to hide assets while simultaneously trying to "run out the clock."

The judge further found the affidavit of legal services submitted by

plaintiff's counsel comported with the Rules of Professional Conduct (RPCs),

specifically RPC 1.5(a). After reviewing the affidavit, the judge concluded the

hourly rate charged by plaintiff's counsel was fair and reasonable and consistent

with counsel's level of expertise in handling the litigation. The judge opined

"the hourly rates charged could easily be characterized as a 'bargain'" "due to

the level of experience and sophistication required for this type of litigation."

Further, the judge stated "the bill clearly demonstrate[d] that counsel's time was

billed to the tenth-of-an-hour, and all time spent on this matter was reasonable

and appropriate under RPC 1.5. Rendine v. Pantzer, 141 N.J. [292,] 334-[]35

[(1995)]."

The judge determined defendants' "pervasive contempt of th[e] . . . post[-]judgment [o]rders and refusal to comply with post[-]judgment discovery [wa]s simply, outrageous." He found defendants' "blatant and continuous contemptuous conduct [was] a clear attempt to 'run out the clock' until [the] appeals [we]re resolved." The judge explained that he "made it abundantly clear . . . the process will not be stalled because defendants[] have absolutely no respect for our justice system." The judge detailed the legal services for which he awarded reasonable attorney's fees, including work attributable to "defendant['s] contempt of the previous discovery [o]rders" and multiplied the hours of work associated with certain tasks by plaintiff's counsel's reasonable hourly rate.

The judge wrote: "[T]his [c]ourt finds that an award of attorney['s] fees and costs is warranted. However, they should be limited . . . to preclude fees associated with defendants' motion to stay the proceedings pending appeal based on the proposed supersede[a]s bond." The judge held defendants owed plaintiff $46,008, plus accrued interest on that amount. Additionally, the judge declined to impose sanctions against defendants, reasoning the "ruling in this matter, along with the imposition of attorney fees and costs in the prior [o]rders, represent[ed] sufficient coercive measures." Defendants appealed the judge's

11

October 28, 2024 order, asserting the judge abused his discretion in finding defendants violated litigant's rights and awarding $46,008 in attorney's fees to plaintiff.

The January 30, 2025 Order

In December 2024, plaintiff served subpoenas to take the depositions of representatives of iCreditWorks, Inc., Stephen G. Sweeney Trust, and Brittany Sweeney Trust. The same day as plaintiff served these subpoenas, defendants gave plaintiff a bank check in the amount of $291,871.48, representing full payment toward the August 30, 2023 judgment, plus accrued interest.

Plaintiff contended the tendered amount failed to represent full payment of all principal and interest accruing through December 20, 2024. Plaintiff calculated the amount owed totaled $309,914.51. Plaintiff further asserted interest accrued at a rate of ten percent, resulting in defendants' payment of $18,043.03 less than the full amount due under the judgment. Consequently, plaintiff declined to discharge the judgment or acknowledge satisfaction of the judgment. Defendants then sought supersedeas bonds for the remaining two judgments on appeal.[2]

---

[2] On December 20, 2024, defendants obtained a supersedeas bonds in the amount of $31,905.47 for the June 20, 2024 order and $50,235.30 for the

Defendants again moved for a stay pending appeal and an order declaring their satisfaction of the original judgment. Plaintiff cross-moved to enforce litigant's rights, declare defendants in contempt of court orders, compel payment of attorney's fees and costs, impose daily sanctions, and confirm the ten percent post-judgment interest rate accrued on the amount of the final judgment of $274,260.64. Plaintiff's counsel submitted certification of legal services in the amount of $34,430.68.

The judge heard argument on plaintiff's cross-motion to enforce litigant's rights. He explained the confusion regarding the interest rate was the result of unclear language in his October 28, 2024 order. The judge clarified his intention "was not to create a windfall for" plaintiff by charging ten percent interest on top of the principal amount as plaintiff asserted. Rather, the judge stated "[t]he percentage that [he] should've put in the order if we were going to include a percentage would've been 4.91%." Both parties accepted the judge's clarification regarding the interest rate.

However, plaintiff still sought to recover attorney's fees and other relief requested in his cross-motion. He asserted unnecessary legal fees were incurred

October 28, 2024 order. Plaintiff consented to the posting of these bond amounts.

13

because defendants failed to tell the truth regarding their assets through post-judgment discovery. He further argued defendants' delay in payment of the original judgment and posting of bonds for subsequent judgment did not compensate him for defendants' willfully ignoring the court's June, July, and August 2024 orders.

The judge stated he would review the bill for additional legal services incurred by plaintiff and determine if defendants owed additional sums because Sweeney could have stopped the expenditure of legal fees if he paid the judgments or posted a bond sooner. The judge noted plaintiff's "won on every issue" and he would allow a two-week stay for defendants to obtain a supersedeas bond for any additional attorney's fees awarded. Additionally, the judge explained he previously reviewed plaintiff's counsel's hourly rate with respect to the prior orders awarding attorney's fees and did not "need to . . . make additional findings that [plaintiff's counsel's] rate [wa]s very reasonable for the work that [he had] do[ne] and [his] level of experience."

In a January 30, 2025 order, the judge granted defendants' motion for entry of an order of satisfaction concerning the original judgment, partially granted plaintiff's cross-motion to enforce litigant's rights, granted plaintiff's cross-motion for attorney's fees in the amount of $9,299, denied plaintiff's cross-

motion to impose daily sanctions, and denied plaintiff's cross-motion regarding the ten percent post-judgment interest accruing on the principal sum.

In a four-page rider to this order, the judge cited the standard governing assessment of reasonable attorney's fees under RPC 1.5(a). After a careful review of the record, the judge found the rate charged by plaintiff's counsel was fair and reasonable. The judge explained the work performed by plaintiff's counsel, based on the sophisticated level of expertise associated with this complex litigation "could easily be characterized as a 'bargain.'" Further, the judge found that the bill for legal services reflected time spent in increments of a tenth-of-an-hour, and was reasonable and appropriate under RPC 1.5. As the judge wrote:

> Had [Sweeney] acted in good faith and in accordance with the law, rather than flout his legal obligations, plaintiff would not have had to spend additional resources in pursuit of the relevant information. Additionally, had . . . [Sweeney] truthfully complied with the information subpoenas, plaintiff could have levied upon those assets once identified. [Sweeney]'s specific misconduct was noted on the record and incorporated herein.

With respect to legal fees incurred after December 18, 2024, the judge denied plaintiff's request, finding that work "was unnecessary." The judge concluded legal work after that date "should not be borne by . . . defendant[s]"

because defendants "demonstrated [their] intent to secure two of the three remaining judgments with a bond."

Although the judge partially granted plaintiff's motion to enforce litigant's rights, he reduced the amount owed to $9,299. The judge also entered a fourteen-day stay of this order "to forgo additional and unnecessary litigation" and "afford defendant[s] time to decide if [they] want[ed] to post a supersede[a]s bond or deposit with the court sufficient funds to secure this judgment and pursue an appeal."

Defendants appealed the January 30, 2025 order, asserting the judge abused his discretion in finding defendants violated litigant's rights and awarding $9,299 in attorney's fees. Plaintiff and defendants consented to a stay of this order pending appeal.

On appeal, defendants argue the judge erred in finding they violated plaintiff's rights under Rule 1:10-3 with respect to the June 20, 2024 order. They further assert the judge abused his discretion in awarding attorney's fees to plaintiff for work unrelated to the enforcement of court orders. Additionally, even if the award of fees was appropriate, defendants contend the judge erred in failing to properly analyze the reasonableness of the amount requested by, and awarded to, plaintiff.

16

We review a trial court's order enforcing litigant's rights under Rule 1:10-3 for abuse of discretion. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)). "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 459 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"[A] decision to award counsel fees 'rests within the sound discretion of the trial court.'" Ibid. (quoting Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003)). We "will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). We afford trial courts "considerable latitude in resolving fee applications." Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012).

We first address defendants' argument the judge erred in finding they violated litigant's rights under Rule 1:10-3 regarding the June 20, 2024 order.[3]

---

[3] Defendants do not appeal the judge's finding they violated litigant's rights under the October 28, 2024 or January 30, 2025 orders.

A-3605-23

Defendants argue the judge "penalized [d]efendants for filing a motion to quash an overly broad post-judgment subpoena" despite defendants' "right to seek a limitation on post-judgment subpoenas." Defendants further contend the judge's finding was improperly premised on plaintiff's baseless motion to compel Sweeney's deposition on "unilaterally set dates without discussing with [d]efendants' counsel" and then claiming defendants "were not cooperating."

Rule 1:10-3 provides: "Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action." The Rule is "a device to enable a litigant to enforce his or her rights." In re Adoption of N.J.A.C. 5:96 & 5:97 ex rel. N.J. Council on Affordable Hous., 221 N.J. 1, 17 (2015). It "provides a 'means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order.'" N. Jersey Media Grp. Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in the original) (quoting In re N.J.A.C. 5:96, 221 N.J. at 17-18). "A Rule 1:10-3 motion is an appropriate vehicle for a party who alleges a violation of a judgment." Abbott ex rel. Abbott v. Burke, 206 N.J. 332, 359 (2011).

Here, the judge found defendants violated plaintiff's rights by failing to respond to duly served subpoenas and neglecting to disclose the existence of

non-party entities in their subpoena responses when they did respond. The judge concluded plaintiff "would not have had to file the[] subpoenas or motions . . . had [defendants] simply complied with [plaintiff]'s initial post[-]judgment discovery requests." As the judge noted, defendants spent months "evading [plaintiff]'s legitimate attempts to conduct this discovery, forcing [plaintiff] to resort to options such as these subpoenas to receive the information necessary to collect on his judgment." The judge expressly found defendants' "evasive conduct . . . necessitat[ed] the[] subpoenas."

Having reviewed the record, we are satisfied there is ample support for the judge's finding that defendants' willfully "evasive conduct" required plaintiff to file multiple post-judgment discovery motions to collect the judgment. Initially, defendants ignored plaintiff's subpoenas. In November 2023, the judge ordered defendants to furnish responses. When defendants finally responded, they submitted false or inaccurate information by concealing ownership interests, bank accounts, and income sources.

We also reject defendants' argument that plaintiff prematurely sought judicial intervention in the scheduling of post-judgment depositions. Plaintiff diligently attempted to schedule depositions to accommodate defense counsel's schedule. However, the offered deposition dates were met with silence from

defendants. Thus, plaintiff asserted that the court's intervention was required to ensure completion of the post-judgment depositions to discover assets held by defendants.

The record is replete with facts supporting the judge's determination that defendants' systemic delay, concealment of assets, and contemptuous conduct warranted finding a violation of litigant's rights. We are satisfied the judge properly exercised his discretion in finding defendants' ongoing and willful noncompliance with court orders directed to plaintiff's efforts to enforce the judgment violated litigant's rights under Rule 1:10-3.

We next address defendants' challenge to the attorney's fees under all three orders. Defendants argue the judge "abused [his] discretion in entering the fee award by awarding reimbursement of time unrelated to enforcement of a court order." We disagree.

Pursuant to Rule 1:10-3, "[t]he court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule." "[A] party who willfully fails to comply with an order or judgment entitling his adversary to litigant's rights is properly chargeable with his adversary's enforcement expenses." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.4.5 on R. 1:10-3 (2025); see also In re N.J.A.C.

5:96, 221 N.J. at 18 (allowing sanctions when a party willfully failed to comply with a court order). "The motion to enforce litigant's rights described in Rule 1:10-3 is addressed to a court's 'inherent right to invoke coercive measures designed to compel a recalcitrant party to comply with a court order.'" S.S. v. E.S., 243 N.J. Super. 1, 8 (App. Div. 1990).

Here, because defendants continually violated litigant's rights under Rule 1:10-3, the judge found the award of attorney's fees appropriate.

In his June 20, 2024 order, the judge concluded "an award of attorney's fees [wa]s warranted in the interest of justice, as [plaintiff] would not have had to file these subpoenas or motions . . . had [defendants] simply complied with [plaintiff]'s initial post[-]judgment discovery requests."

In his October 28, 2024 order, the judge found defendants were in contempt of his July 23 and August 15, 2024 orders compelling Sweeney's deposition and production of information and documents. The judge awarded attorney's fees to plaintiff because defendants "unfairly caused [plaintiff] to expend significant resources in attempting to compel [defendants'] compliance with the [o]rders, and obstructed [plaintiff] from obtaining the post-[j]udgment discovery to which [plaintiff] [wa]s . . . entitled."

21

In his January 30, 2025 order, the judge found attorney's fees were appropriate "based on [Sweeney]'s continued misrepresentation of his assets and income by his false swearing in response to the [i]nformation [s]ubpoenas, and his production of only 'drips of information.'" The judge explained "[Sweeney] continue[d] to force plaintiff to incur substantial additional expenses -- expenses that would never have been necessary but for . . . defendants' systematic obstruction."

We further reject defendants' assertion that the judge awarded attorney's fees to plaintiff for work unrelated to enforcement of court orders. Based on our review of the record, we are satisfied the judge only awarded legal fees for work related plaintiff's enforcement of the judgment and court orders. In determining the appropriate fee award, the judge ensured plaintiff was "compensated for only those fees necessary to achieve the final result." See Grow Co., 424 N.J. Super. at 368. Based on defendants' decision to "flout [their] legal obligations" and require "plaintiff . . . to spend additional resources in pursuit of the relevant information," the judge properly allowed fees and costs to plaintiff under Rule 1:10-3 associated with plaintiff's motions to enforce defendants' compliance with the judgment and court orders and did not abuse his discretion.

We next consider defendants' argument that even if attorney's fees were appropriate, the amount awarded was excessive and unreasonable. Defendants contend the judge erred by failing to calculate the lodestar and determine the reasonableness of the hours expended. We reject their argument.

New Jersey courts "rely on the spirit of our Supreme Court's declaration that 'there is no precise formula . . . [and that t]he ultimate goal is to approve a reasonable attorney's fee that is not excessive.'" Grow Co., 424 N.J. Super. at 368-69 (alteration in the original) (quoting Litton, 200 N.J. at 388).

In this matter, the judge awarded attorney's fees under Rule 1:10-3, which explicitly permits fee awards and the imposition of sanctions against a non-compliant party. See Hynes v. Clarke, 297 N.J. Super. 44, 57 (App. Div. 1997). Moreover, the Rule grants wide latitude to a trial judge "in fashioning relief to litigants when a party does not comply with a judgment or order." N. Jersey Media Grp., Inc., 451 N.J. Super. at 296 (quoting In re N.J.A.C. 5:96, 221 N.J. at 17-18). "The particular manner in which compliance may be sought is left to the court's sound discretion." Ibid. (quoting 1189 Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001)). Relief under Rule 1:10-3, including sanctions, is meant to serve "as a coercive

23

measure to facilitate the enforcement of the court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997).

Here, plaintiff did not receive an award of attorney's fees under a fee-shifting statute or contract. Under a fee-shifting statute or contract, the judge would have been required to compute the lodestar and "determine the reasonableness of the hourly rates charged by the successful party's attorney in comparison to rates 'for similar services by lawyers of reasonably comparable skill, experience and reputation' in the community." Grow Co., 424 N.J. Super. at 367 (quoting Rendine, 141 N.J. at 337). [T]hen the judge would "determine the reasonableness of the hours expended on the case." Ibid. (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22 (2007)).

On this record, we note the judge carefully reviewed the reasonableness of the requested fees and, where appropriate, limited those fees based on the work performed. The judge's award of attorney's fees also reflected his intimate familiarity with the case, having presided over the bench trial and the never-ending post-judgment motions. See Grow Co., 424 N.J. Super. at 366 (affirming the fee award as reasonable where the judge considered the requested fees "in light of the feel of the case developed from having presided over the lengthy trial").

RPC 1.5(a) requires the court to consider the following factors to determine whether a fee is reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and]
>
> (8) whether the fee is fixed or contingent.

In his June 20, 2024 order, the judge expressly stated plaintiff's "application for attorney's fees . . . comport[ed] with the guidelines and limitations of Rule 4:42-9(a)(4) and RPC 1.5(a)." Thus, he awarded attorney's fees in the amount of $30,199.22 under Rule 1:10-3.

25

In the October 28, 2024 and January 30, 2025 orders, the judge stated his considerations of plaintiff's certification for legal services under RPC 1.5(a). The judge found the rates charged by plaintiff's counsel were "fair and reasonable for the litigation and experience of counsel." Further, based on the level of experience and sophistication required for this type of case, the judge found the hourly rate appeared to be a "bargain."

Based on his thorough review of plaintiff's certifications in support of legal services, the judge awarded $46,008 in attorney's fees under the October 28, 2024 order and $9,299 in attorney's fees under the January 30, 2025 order. The judge properly limited the recoverable fees to those expended "entirely for efforts to satisfy the judgment" and declined to award attorney's fees for work done subsequent to defendants' August 20, 2024 notice of the supersedeas bond and December 18, 2024 payment of the judgment.

Specifically, at the January 22, 2025 hearing, the judge stated he "already reviewed [plaintiff's counsel's] rate several times" and did not "need to . . . make additional findings that [plaintiff's counsel's] rate wa[s] very reasonable for the work that [he had] do[ne] and [his] level of experience." He also explained "[t]he amount of time that is spent on each task is always very to the point. It's the proper amount of work spent to do the task at hand."

A-3605-23

Given the judge's unique and comprehensive perspective of the case, as well as his keen and clear reasoning supporting the amount of fees awarded in all three orders challenged on appeal, we are satisfied judge did not abuse his discretion regarding the awarded attorney's fees.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division